**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Crim. No. 21-cr-00034 (CRC)** |
| | : | |
| **v.** | : | |
| | : | |
| **THOMAS ROBERTSON,** | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES' OPPOSITION TO DEFENDANT ROBERTSON'S**
**MOTION TO DISMISS COUNT ONE OF THE INDICTMENT**

The United States, by and through its undersigned attorneys, respectfully opposes defendant Thomas Robertson's Motion to Dismiss Count One of the Indictment. That Count, which charges him with obstructing an official proceeding in violation of 18 U.S.C. § 1512(c)(2), arises from the defendant's actions on January 6, 2021, when he entered the U.S. Capitol building with a mob of rioters for the purpose of disrupting Congress's certification of the Electoral College vote. Because Count One adequately notifies the defendant of the crime with which he is charged, because the certification of the Electoral College vote is an official proceeding as defined in § 1515(a)(1), and because § 1512(c)(2) is not unconstitutionally vague, the motion should be denied.

**PROCEDURAL HISTORY**

The defendant, a former police officer in Rocky Mount, Virginia, is charged with crimes arising from his involvement in the riot at the U.S. Capitol on January 6, 2021. On that day, the defendant entered the U.S. Capitol building and was photographed making an obscene gesture in front of a statute of John Stark in the Capitol's crypt. On January 12, 2021, the defendant was charged by Complaint in the District of Columbia for misdemeanor violations of 18 U.S.C. § 1752 and 50 U.S.C. § 5104. On January 29, 2021, a federal grand jury in the District of Columbia returned an indictment that charges Robertson with felony violations of 18 U.S.C. §§ 1512(c)(2),

2 (Obstruction of an Official Proceeding and Aiding and Abetting) and with misdemeanor

violations of 18 U.S.C. § 1752(a)(1) (Entering and Remaining in a Restricted Building), 1752(a)(2)

(Disorderly and Disruptive Conduct in a Restricted Building), and 40 U.S.C. § 5104 (Violent Entry

and Disruptive Conduct in a Restricted Building).

On December 1, 2021, the defendant filed a motion to dismiss Count One of the indictment

(ECF 52), which charges him with Obstruction of an Official Proceeding in violation of 18 U.S.C.

§ 1512(c)(2).  For the reasons stated below, the defendant's motion is without merit and should be

denied.

## LEGAL STANDARD

A defendant may move to dismiss an indictment or count thereof for failure to state a claim

prior to trial.  *See* Fed. R. Crim. P. 12(b)(3)(B)(v).  In considering a motion to dismiss, "[a]n

indictment must be viewed as a whole and the allegations must be accepted as true in determining

if an offense has been properly alleged.  *United States v. Bowdin*, 770 F. Supp. 2d 142, 146 (D.D.C.

2011).  The operative question is whether the allegations, if proven, would be sufficient to permit

a jury to find that the crimes charged were committed.  *Id.*  An indictment must contain every

element of the offense charged, if any part or element is missing, the indictment is defective and

must be dismissed."  *See United States v. Hillie*, 227 F. Supp. 3d 57, 70 (D.D.C. 2017); Mot. 5.[1]

Section 1512(c)(2) of Title 18 of the U.S. Code provides that "[w]hoever corruptly . . .

obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under

this title or imprisoned not more than 20 years, or both." The "Definitions" provision, 18 U.S.C.

---

[1] All citations to the defendant's motion are to ECF No. 48-1, and the page number citations
are to the page numbers at the bottom of the page, rather than the page numbers in blue at the top.

§ 1515, states that "[a]s used in section[] 1512," (1) the term 'official proceeding' means— (A) a proceeding before a judge or court of the United States … or a Federal grand jury;" (B) a proceeding before the Congress; (C) a proceeding before a Federal Government agency which is authorized by law; or (D) a proceeding involving the business of insurance … before any insurance regulatory official or agency…." 18 U.S.C. § 1515(a)(1).

Federal Rule of Criminal Procedure 7(c)(1) governs the "Nature and Contents" of an indictment. The rule states, in relevant part, that "[t]he indictment … must be a plain, concise, and definite written statement of the essential facts constituting the offense charged," and that "[f]or each count, the indictment or information must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated."

## ARGUMENT

The defendant's arguments urging dismissal of Count One—that the charge is defective because it lacks specificity about the official proceeding that the defendant obstructed, that the joint session of Congress was not an "official proceeding" within the meaning of the statute, and that the statute is unconstitutionally vague—are meritless.  As detailed below, not one of these claims warrants the relief he seeks.

### I.    The Defendant Has Adequate Notice of the "Official Proceeding" He Is Charged With Obstructing

There is no defect in the indictment in this case.  To be sufficient under the Constitution, an indictment "need only inform the defendant of the precise offense of which he is accused so that he may prepare his defense and plead double jeopardy in any further prosecution for the same offense." *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014); *see United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007).  Federal Rule of Criminal Procedure 7(c) effectuates that

understanding, requiring "a plain, concise, and definite written statement of the essential facts constituting the offense charged." As this Court has stated, "'an indictment must contain every element of the offense charged *and* must fairly apprise the accused *of the conduct allegedly constituting the offense* so as to enable him to prepare a defense against those allegations.'" *Hillie*, 227 F. Supp. at 81 (emphases in original).

The indictment here readily meets this standard. Section 1512(c)(2) penalizes a person who "corruptly obstructs, influences, or impedes any official proceeding." Count 1 of the indictment provides that:

> On or about January 6, 2021, within the District of Columbia and elsewhere, THOMAS ROBERTSON and JACOB FRACKER, attempted to and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, by entering and remaining in the United States Capitol without authority and participating in disruptive behavior.

ECF No. 8. The indictment thus sets forth all essential elements of the offense.

The cases the defendant relies upon to argue that the indictment language is deficient, *United States v. Hillie,* 227 F. Supp. 3d 57, 81 (D.D.C. 2017), and *United States v. McGarity*, 669 F.3d 1218 (11th Cir. 2012), are readily distinguishable. In *Hillie*, the challenged indictment only broadly stated the date of the offenses as "periods of time that span two to three years," the location of the offenses as "the District of Columbia," and was "devoid of any facts regarding the circumstances of Hillie's behavior" that led to the charges. *Id.* at 71-72. Similarly, in *McGarity*, the challenged charge spanned a two and a half year period and only generally alleged obstruction "in an official proceeding," because, the government argued, the defendants had "sought to impede 'any possible proceeding that might exist.'" 669 F.3d at 1239. Here, by contrast, the indictment against defendant Robertson not only tracks and echoes the statute, but also specifies the particular date of the obstruction ("January 6, 2021"), its precise location ("in the United States Capitol"),

4

the acts amounting to obstruction ("entering and remaining … without authority and participating in disruptive conduct"), and the type of official proceeding ("that is, a proceeding before Congress"). *See United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007) (upholding sufficiency of indictment that echoed statute while specifying time and place of the offense and identity of the threatened officer); *United States v. Williamson*, 903 F.3d 124, 131 (D.C. Cir. 2018) (same). The defendant here cannot contend—and, indeed, he does not contend—that he is uncertain about what conduct "allegedly constitut[es] the offense, *Hillie*, 2127 F. Supp. 3d at 81. And he is in no way unable to prepare a defense or invoke double jeopardy if he were prosecuted again for the same conduct. *McGarity*, 669 F.3 at 1240. Absent any such infirmity, there is no basis to dismiss the charge here.[2]

The defendant further claims that the indictment's specification of the "official proceeding" as "a proceeding before Congress" must be *further* specified to state the particular proceeding before Congress on January 6, 2021 that they are accused of obstructing. Mot. at 3. But statutory and case law does not require such minutia. For example, in *United States v. Williamson*, Williamson was charged with "threatened assault with intent to retaliate against the officer on account of the performance of official duties." The D.C. Circuit explained that *which* "official

---

[2] Defendant's reliance on *United States v. Russell*, 369 U.S. 749 (1962) is similarly misplaced. In that case, the Court addressed the particularity requirements of an indictment for contempt of Congress, in violation of 2 U.S.C. § 192. Because that statute criminalizes refusing "to give testimony or to produce papers upon any matter under inquiry," the Court found that "the question under congressional committee inquiry" must be included in the indictment in order for the defendant to be given "reasonable certainty" as to what charge he must defend against. *Russell*, 369 U.S. at 764-65. The indictment here, which identifies the date of the alleged obstruction (January 6, 2021), its location (in the United States Capitol), and the type of official proceeding ("that is, a proceeding before Congress") presents no similar ambiguity to the defendant for purposes of mounting a defense.

duty" was at issue was "not at all 'central to every prosecution under the statute'" nor "'the very core of criminality' under the statute." 903 F.3d at 131; *see also Resendiz-Ponce*, 549 U.S. at 108-09 (indictment's "word 'attempt'" adequately encompassed "three overt acts" performed in the attempt; overt acts did not need to be specified). The statute was written "not to draw attention to a particular official duty, but to assure that the threat generally relates to the officer's performance of official duties rather than to a personal dispute." *Williamson*, 903 F.3d at 131. Here too, the defendant received notice that he is charged with obstructing "a proceeding before the Congress[] by entering and remaining in the United States Capitol" on January 6, 2021, a day on which there was only one proceeding, the Joint Session of Congress to certify the Electoral College vote. This language fairly informs the defendant the of the charge against him in accordance with both the Constitution and Rule 7(c).

Finally, even if defendant had lacked notice, a Bill of Particulars and not dismissal would be the appropriate remedy because the indictment is facially valid. *See United States v. Hajecate*, 683 F.2d 894, 898 (5th Cir. 1982); *Hillie*, 227 F. Supp. 3d at 81. But the defendant does not meet the threshold for a Bill of Particulars, which requires that he "demonstrate surprise or prejudice by the lack of particularization." *United States v. Pollack*, 534 F.2d 964, 970 (D.C. Cir. 1976); *see also United States v. Butler*, 822 F.2d 1191, 1193 (D.C. Cir. 1987) ("[I]f the indictment is sufficiently specific, or if the requested information is available in some other form, then a bill of particulars is not required."). The defendant does not even make such allegations in his motion, nor does he assert any facts supporting such surprise or prejudice. Without any such showing here, even this far more limited remedy is not warranted.

## II.   The Certification of the Electoral College Vote Is An Official Proceeding Under 18 U.S.C. § 1512(c)

The defendant argues (Mot. 4-6) that Congress's certification of the Electoral College vote on January 6, 2021 does not qualify as an "official proceeding" for purposes of 18 U.S.C. § 1512(c)(2). That argument lacks merit.

## A. Background

The Constitution and federal statutory law require that both Houses of Congress meet to certify the results of the Electoral College vote. Two separate provisions in the Constitution mandate that the Vice President while acting as the President of Senate "shall, in the Presence of the Senate and House of Representatives, open all the Certificates, and the Votes shall then be counted." U.S. Const. art. II, § 1, cl. 3; U.S. Const amend. XII. Under the Electoral Act of 1887, a Joint Session of the Senate and the House of Representatives must meet at "the hour of 1 o'clock in the afternoon" on "the sixth day of January succeeding every meeting of the electors." 3 U.S.C. § 15. Section 15 details the steps to be followed: the President of the Senate opens the votes, hands them to two tellers from each House, ensures the votes are properly counted, and then opens the floor for written objections, which must be signed "by at least one Senator and one Member of the House of Representatives." *Id.* The President of the Senate is empowered to "preserve order" during the Joint Session. 3 U.S.C. § 18. Upon a properly made objection, the Senate and House of Representatives withdraw to consider the objection; each Senator and Representative "may speak to such objection . . . five minutes, and not more than once." 3 U.S.C. § 17. The Electoral Act, which specifies where within the chamber Members of Congress are to sit, requires that the Joint Session "not be dissolved until the count of electoral votes shall be completed and the result declared." 3 U.S.C. § 16.

The obstruction statute with which the defendant is charged prohibits corruptly obstructing,

influencing, or impeding any official proceeding.  18 U.S.C. § 1512(c)(2).  An official proceeding for purposes of § 1512(c)(2) is defined as:

> (A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;
>
> (B) *a proceeding before the Congress*;
>
> (C) a proceeding before a Federal Government agency which is authorized by law; or
>
> (D) a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce[.]

18 U.S.C. § 1515(a)(1) (emphasis added).

## B. Certification of the Electoral College vote is a proceeding before the Congress

The certification of the Electoral College vote as set out in the Constitution and federal statute is a "proceeding before the Congress," 18 U.S.C. § 1515(a)(1)(B), and, therefore, an "official proceeding" for purposes of 18 U.S.C. § 1512(c)(2).  That conclusion flows principally from the obstruction statute's plain text.  Skipping past the text, the defendant argues that Congress's intent and other language in the obstruction statute import an "adjudicative" requirement into the term "official proceeding."  The defendant further asserts that the Electoral College vote certification is merely "a 'ceremonial' finalization of the votes that have already been certified by the states," (Mot. at 6) and therefore is not an "official proceeding."  As Judge Friedrich recently concluded, these arguments are incorrect.  *See United States v. Sandlin et al.*, 21-cr-88 (DLF), ECF 63, at 5-9 (D.D.C. Dec. 10, 2021)

Understanding what qualifies as an official proceeding "depends heavily on the meaning

8

of the word 'proceeding'" because "official proceeding" is defined "somewhat circularly" as, among other things, a congressional "proceeding." *See United States v. Ermoian*, 752 F.3d 1165, 1169 (9th Cir. 2013).   The certification of the Electoral College vote constitutes a "proceeding" under any interpretation of that term.   In its broadest and most "general sense," a proceeding refers to "[t]he carrying on of an action or series of actions; action, course of action; conduct, behavior." *Id.* (quoting *Proceeding,* Oxford English Dictionary, *available at* http://www.oed.com).   The certification of the Electoral College vote, which involves a detailed "series of actions" outlining how the vote is opened, counted, potentially objected to, and ultimately certified, is a proceeding— and indeed an official proceeding—under that broad definition.   And there is good reason to construe "proceeding" as used in 18 U.S.C. § 1515 broadly.   Section 1515's text encompasses not only congressional proceedings, but judicial proceedings, grand jury proceedings, any legally authorized proceedings before federal government agencies, and proceedings "involving the business of insurance."   18 U.S.C. § 1515(a)(1); *see* S. Rep. No. 97-532, at 17 (1982) (noting that the "term 'official proceeding'" in the obstruction statute is "defined broadly").

But even if the "legal—rather than the lay—understanding" of proceeding governs Section 1515's interpretation, *see Ermoian*, 752 F.3d at 1170, the Electoral College vote certification qualifies.   This narrower definition includes the "business conducted by a court or other official body; a hearing."   Black's Law Dictionary, "proceeding" (11th ed. 2019).   Taken with its modifier "official," the term proceeding thus "connotes some type of formal hearing."   *Ermoian*, 752 F.3d at 1170; *see United States v. Ramos*, 537 F.3d 439, 462 (5th Cir. 2008) (the "more formal sense" of "official proceeding" is "correct in the context of § 1512").   For example, in cases assessing whether a law enforcement investigation amounts to an "official proceeding" as defined in Section

1515—including the cases relied upon by the defendant—courts analyze the degree of formality involved in an investigation.  *See, e.g.*, *United States v. Sutherland*, 921 F.3d 421, 426 (4th Cir. 2019) (FBI investigation not an "official proceeding" because that term "implies something more formal than a mere investigation"), *cert. denied*, 140 S. Ct. 1106 (2020); *Ermoian*, 752 F.3d at 1170-72 (same); *United States v. Perez*, 575 F.3d 164, 169 (2d Cir. 2009) (internal investigation conducted by a review panel within the Bureau of Prisons was an "official proceeding" because the review panel's "work [was] sufficiently formal"); *Ramos*, 537 F.3d at 463 (internal investigation conducted by Customs and Border Patrol not an "official proceeding" because that term *"*contemplates a formal environment"); *United States v. Dunn*, 434 F. Supp. 2d 1203, 1207 (M.D. Ala. 2006) (investigation conducted by Bureau of Alcohol, Tobacco, and Firearms not an "official proceeding" because that term encompasses "events that are best thought of as hearings (or something akin to hearings)"); *see also United States v. Kelley*, 36 F.3d 1118, 1127 (D.C. Cir. 1994) (holding that a "*formal* investigation" conducted by the Officer of the Inspector General at the Agency for International Development qualified as a "proceeding" for purposes of 18 U.S.C. § 1505) (emphasis added).

The formality involved in the certification of the Electoral College vote places it "comfortably within the category" of an official proceeding. *See Perez*, 575 F.3d at 169.  Few events are as solemn and formal as a Joint Session of the Congress.  That is particularly true for the certification of the Electoral College vote, which is expressly mandated under the Constitution and federal statute.  Required by law to begin at 1 pm on the January 6 following a presidential election, the certification of the Electoral College vote is both a "hearing" and "business conducted by . . . [an] official body."  *See* Black's Law Dictionary, *supra*.  The Vice President, as the President

of the Senate, serves as the "presiding officer" over a proceeding that counts votes cast by Electors throughout the country in presidential election.  3 U.S.C. § 15.  As in a courtroom, Members may object, which in turn causes the Senate and House of Representatives to "withdraw" to their respective chambers so each House can render "its decision" on the objection.  *Id.*  And just as the judge and parties occupy specific locations in a courtroom, so too do the Members within the "Hall."  *See* 3 U.S.C. § 16 (President of the Senate is in the Speaker's chair; the Speaker "immediately upon his left"; the Senators "in the body of the Hall" to the right of the "presiding officer"; the Representatives "in the body of the Hall not provided for the Senators"; various other individuals "at the Clerk's desk," "in front of the Clerk's desk," or "upon each side of the Speaker's platform").  The Electoral College vote certification, moreover, must terminate with a decision: no recess is permitted until the "the count of electoral votes" is "completed," and the "result declared." *Id.*  In short, the certification of the Electoral College vote is a "proceeding before the Congress." *See* 18 U.S.C. § 1515(a)(1)(B).  Given these facts, the defendant's assertion that the Electoral College vote certification is merely "administrative and ceremonial," and therefore beyond the reach of the statute, is simply wrong.

Rather than engage with Section 1515's text, the defendant relies on "congressional intent of 18 U.S.C. § 1512(c)" and "the legislative history and purpose of the Electoral Act of 1887" to argue that the certification of the Electoral College vote is not an "official proceeding" because it is "ceremonial" and "not an adjudicative proceeding."  Mot. at 6.  That approach fails in three respects.  First, it is methodologically flawed.  To determine the meaning of a statute, the Court "look[s] first to its language, giving the words used their ordinary meaning."  *Levin v. United States*, 568 U.S. 503, 513 (2013) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)).  In

11

ordinary parlance, a gathering of the full Congress to certify the Electoral College vote is a congressional proceeding, a proceeding before the Congress.  Because Section 1515(a)(1)(B)'s words "are unambiguous, the judicial inquiry is complete."  *See Babb v. Wilkie*, 140 S. Ct. 1168, 1177 (2020) (internal quotation marks omitted).  The defendant offers no rationale for breezing past the statute's plain text to reach for other interpretive tools.

The defendant also suggests (Mot. at 1-2) that Section 1512's title—"Tampering with a witness, victim, or an informant"—provides a basis for dismissal of Count One, because the Count is "erroneously charged" as "Obstruction of an Official Proceeding."  Even putting aside the defendant's selective invocation of the statutory title—he urges this Court to adopt the reasoning in cases like *Ermoian* holding that an "official proceeding" does not include a law enforcement investigation even though the title's reference to "an informant" would clearly suggest otherwise— his contention runs headlong into "the wise rule" that neither "the title of a statute" nor "the heading of a section" can "limit the plain meaning of the text."  *Brotherhood of R.R. Trainmen v. Baltimore & Ohio R. Co.*, 331 U.S. 519, 528-29 (1947).  Moreover, the specific statutory provision under which the defendant is charged, 18 U.S.C. § 1512(c)(2), explicitly reaches more broadly than tampering: it "operates as a catch-all to cover otherwise obstructive behavior that might not constitute a more specific" obstruction offense.  *United States v. Petruk*, 781 F.3d 438, 447 (8th Cir. 2015) (quoting *United States v. Volpendesto*, 746 F.3d 273, 286 (7th Cir. 2104)).

Finally, the defendant's narrowed reading of "proceeding before the Congress" in 18 U.S.C. § 1515(a)(1)(B)—in essence, importing an extra-textual "adjudicative" requirement— would undercut the broad statute that Congress enacted.  In the defendant's view, for example, an individual who threatened a Senator and a Representative with injury unless each agreed to object

to the Electoral College certification—even though each Member knew that the objections were frivolous—would not amount to obstruction.  Nor would it appear to cover an individual who paid one of the tellers—who are appointed by the Senate and House of Representatives to handle the Electoral College votes—to falsify or destroy votes.  That crabbed approach fails to recognize that the certification of the Electoral College vote is an official proceeding that is "crucial to the conduct of government" and therefore "entitled to go forward free of corrupting influences that not only delay [it] but increase the chances of false and unjust outcomes."  *Sutherland*, 921 F.3d at 426. Whatever the outer limits of a "proceeding before the Congress" for purposes of the obstruction statute, the Electoral College vote certification falls well within them.

The defendant's challenge fails even if he were correct—and he is not—that for a proceeding to constitute an "official proceeding" under the obstruction statute, that proceeding must be "adjudicative."  Far from a "a ceremonial and administrative event" (Mot. at 4), the certification of the Electoral College vote comprises features that resemble an adjudicative proceeding.  It involves the convening of a Joint Session of Congress, a deliberative body over which a government officer, the Vice President as President of the Senate, "presid[es]."  3 U.S.C. § 15.  That body convenes to render judgment on whether to certify the votes cast by Electors in the presidential election.  As in an adjudicative setting, parties may lodge objections to the certification, and if any such objection is lodged, each House must consider the objection and make a "decision" whether to overrule or sustain it.  *Id.*  And just as a jury does not (barring a mistrial) recess until it has reached a verdict, the Joint Session cannot "be dissolved" until it has "declared" a "result."  3 U.S.C. § 16.

The defendant's remaining arguments also lack merit.  First, the defendant implies (Mot.

at 7) that courts have agreed with his narrowed approach.  As noted above, however, those cases addressed an entirely different question, namely, whether law enforcement investigations qualified as "official proceedings" under a subsection defining that term as a "proceeding before a Federal Government agency which is authorized by law."  18 U.S.C. § 1515(a)(1)(C).  Those courts have therefore struggled with questions—to what extent an agency investigation is a proceeding; whether the requirement in § 1512(f)(1) that a proceeding "need not be pending or about to be instituted at the time of the offense" as applied to agency investigations would reach "conduct that occurred even pre-criminal-investigation," *Ermoian*, at 752 F.3d at 1172; whether the "official" modifier "implies something more formal than a mere investigation," *Sutherland*, 921 F.3d at 426—that do not arise here.  The certification of the Electoral College vote is a congressional proceeding, not an investigation, and involves a degree of formality distinct from any agency investigations.  And, in any event, the pertinent definition—a "proceeding before the Congress"— is phrased more broadly than the definition those courts were construing.

### C.  Section 1512(c)(2) Is Not Unconstitutionally Vague

The defendant argues that Section 1512(c)(2) is unconstitutionally vague, both on its face and as applied in this case.  He is wrong on both counts.  *See Sandlin*, *supra*, at 18-26 (rejecting vagueness challenge to Section 1512(c)(2)).

The Due Process Clauses of the Fifth and Fourteenth Amendments prohibit the government from depriving any person of "life, liberty, or property, without due process of law."  U.S. Const. amends. V, XIV.  An outgrowth of the Due Process Clause, the "void for vagueness" doctrine prevents the enforcement of a criminal statute that is "so vague that it fails to give ordinary people fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement."

14

*Johnson v. United States*, 576 U.S. 591, 595 (2015).   To ensure fair notice, "'[g]enerally, a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply.'"   *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017) (quoting *Texaco, Inc. v. Short*, 454 U.S. 516, 532 (1982)).   To avoid arbitrary enforcement, the law must not "vest[] virtually complete discretion" in the government "to determine whether the suspect has [violated] the statute." *Kolender v. Lawson*, 461 U.S. 352, 358 (1983).

A statute is not unconstitutionally vague simply because its applicability is unclear at the margins, *United States v. Williams*, 553 U.S. 285, 306 (2008), or because reasonable jurists might disagree on where to draw the line between lawful and unlawful conduct in particular circumstances, *Skilling v. United States*, 561 U.S. 358, 403 (2010).   "'Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid.'"   *Bronstein*, 849 F.3d at 1107 (quoting *Rose v. Locke*, 423 U.S. 48, 50 (1975) (per curiam)).   Rather, a provision is impermissibly vague only if it requires proof of an "incriminating fact" that is so indeterminate as to invite arbitrary and "wholly subjective" application.   *Williams*, 553 U.S. at 306; *see Smith v. Goguen*, 415 U.S. 566, 578 (1974).   The "touchstone" of vagueness analysis "is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259, 267 (1997).

A statutory provision is therefore "not rendered unconstitutionally vague because it 'do[es] not mean the same thing to all people, all the time, everywhere.'"   *Bronstein*, 849 F.3d at 1107 (quoting *Roth v. United States*, 354 U.S. 476, 491 (1957)).   A statute is instead vague where it fails

to specify any "standard of conduct . . . at all." *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971).

"As a general matter," however, a law is not constitutionally vague where it "call[s] for the

application of a qualitative standard . . . to real-world conduct; 'the law is full of instances where

a man's fate depends on his estimating rightly . . . some matter of degree.'" *Johnson*, 576 U.S. at

603-04 (quoting *Nash v. United States*, 229 U.S. 373, 377 (1913)).

The defendant fails to overcome the strong presumption that Section 1512(c)(2) passes

constitutional muster. *See United States v. Nat'l Dairy Products Corp*., 372 U.S. 29, 32 (1963)

("The strong presumptive validity that attaches to an Act of Congress has led this Court to hold

many times that statutes are not automatically invalidated as vague simply because difficulty is

found in determining whether certain marginal offenses fall within their language.").  Section

1512(c)(2) does not tie criminal culpability to "wholly subjective" terms such as "annoying" or

"indecent" that are bereft of "narrowing context" or "settled legal meanings," *Williams*, 553 U.S.

at 306, nor does it require application of a legal standard to an "idealized ordinary case of the

crime," *Johnson*, 576 U.S. at 604.  Section 1512(c)(2)'s prohibition on "corruptly . . . obstruct[ing],

influenc[ing], or imped[ing]" an "official proceeding" gives rise to "no such indeterminacy."

*Williams*, 553 U.S. at 306.   The statute requires that a defendant, acting knowingly, with

consciousness of wrongdoing and intent to obstruct, attempts to or does obstruct or interfere with

a statutorily defined official proceeding.  While "it may be difficult in some cases to determine

whether these clear requirements have been met," "'courts and juries every day pass upon

knowledge, belief and intent—the state of men's minds—having before them no more than

evidence of their words and conduct, from which, in ordinary human experience, mental condition

may be inferred.'"  *Id*. (quoting *American Communications Ass'n, CIO v. Douds*, 339 U.S. 382,

411 (1950)).

The defendant's more targeted attack on the terms "official proceeding" and "corruptly" are equally unavailing.  For the reasons explained *supra* at pages 6 to 14, the defendant falls far short of establishing the term "official proceeding" to be vague.  His similar attack on the term "corruptly," relying on *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991) is also meritless. Mot. at 9-10.  The D.C. Circuit in *Poindexter* held that the term "corruptly" was "vague . . . in the absence of some narrowing gloss."  951 F.2d at 378.   However, *Poindexter* is inapposite here for three reasons.

First, the D.C. Circuit narrowly confined *Poindexter's* analysis to Section 1505's use of "corruptly," and expressly declined to hold "that term unconstitutionally vague as applied to all conduct."  951 F.2d at 385.  Five years later, in *United States v. Morrison*, 98 F.3d 619 (D.C. Cir. 1996), the D.C. Circuit rejected a *Poindexter*-based vagueness challenge to 18 U.S.C. § 1512(b) and affirmed the conviction of a defendant for "corruptly" influencing the testimony of a potential witness at trial.  *Id.* at 629-30.  Other courts have similarly recognized "the narrow reasoning used in *Poindexter*" and "cabined that vagueness holding to its unusual circumstances."  *United States v. Edwards*, 869 F.3d 490, 502 (7th Cir. 2017); *see also, e.g., United States v. Kelly*, 147 F.3d 172, 176 (2d Cir. 1998) (rejecting vagueness challenge to "corruptly" in 26 U.S.C. § 7212(a)); *United States v. Shotts*, 145 F.3d 1289, 1300 (11th Cir. 1998) (same for 18 U.S.C. § 1512(b)); *United States v. Brenson*, 104 F.3d 1267, 1280 (11th Cir. 1997) (same for 18 U.S.C. § 1503).  The defendants' invocation of *Poindexter* accordingly fails to establish that Section 1512(c) suffers the same constitutional indeterminacy.

Second, *Poindexter* predated the Supreme Court's decision in *Arthur Andersen LLP v.*

*United States*, 544 U.S. 696 (2005).   There, the Court explained the terms "'[c]orrupt" and 'corruptly' are normally associated with wrongful, immoral, depraved, or evil." *Id*. at 705 (citation omitted).   In doing so, the Court "did not imply that the term was too vague." *Edwards*, 869 F.3d at 502.   And, significantly, following *Arthur Andersen*, courts have encountered little difficulty when addressing "corruptly" in Section 1512(c)(2).   *See United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011) (to act "corruptly" is to act "with an improper purpose" and "with the specific intent to subvert, impede or obstruct") (quoting *United States v. Mintmire*, 507 F.3d 1273, 1289 (11th Cir. 2007)); *United States v. Gordon*, 710 F.3d 1124, 1151 (10th Cir. 2013) (same); *United States v. Watters*, 717 F.3d 733, 735 (9th Cir. 2013) (upholding jury instruction defining "corruptly" as acting with "consciousness of wrongdoing") (internal quotation marks omitted); *United States v. Matthews*, 505 F.3d 698, 705 (7th Cir. 2007) (upholding instruction defining "[c]orruptly" as acting "with the purpose of wrongfully impeding the due administration of justice"); Seventh Circuit Pattern Criminal Jury Instruction for § 1512(c) ("A person acts 'corruptly' if he or she acts with the purpose of wrongfully impeding the due administration of justice."). Such efforts demonstrate that the statute's "corruptly" element does not invite arbitrary or wholly subjective application by either courts or juries.

The defendant provides no support for his position that Section 1512(c)(2) is facially vague or vague as applied.   Nor could he.   "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Parker v. Levy*, 417 U.S. 733, 756 (1974).   In this case, the defendant's own actions, coupled with his own statements about his intentions, leave no question that he intentionally attacked Congress on January 6, 2021.   As early as November 7, 2021, the defendant, who at the time was a sworn law enforcement officer and had previously

served in the U.S. Military, explained on Facebook his intention to become part of a "counter insurgency" to undermine the 2020 election results:

> A legitimate republic stands on 4 boxes. The soapbox, the ballot box, the jury box, and then the cartridge box. We just moved to step 3. Step 4 will be pretty. I cannot speak for others, but being disenfranchised by fraud is my hard line. I've spent most of my adult life fighting a counter insurgency. Im about to become part of one, and a very effective one.

On January 6, 2021, after traveling several hours from his home in Virginia to Washington, D.C., the defendant unlawfully entered the Capitol alongside a mob of rioters, who then destroyed property, broke into Congressional offices, and assaulted law enforcement officers.  The following day, the defendant again made clear on Facebook that, while at the Capitol, "we actually attacked the government who is the problem."   Considering this conduct against the backdrop of the defendant's own explanatory statements, it is clear that he entered the Capitol for the purpose of "attack[ing]" Congress, which was certifying the Electoral College vote, as a "counter insurgency."   Whatever the "uncertainty around the edges," *Edwards*, 869 F.3d at 502, Section 1512(c)'s "corruptly" element provided ample notice to the defendant that his conduct was criminal.

The defendant's remaining arguments also do not establish Section 1512(c) to be vague, either on its face or as applied to him.  The defendant alleges that his statements about his intent and his conduct at the Capitol cannot be used to establish that he acted "corruptly" because those statements are protected by the First Amendment, and therefore he "could not have possibly been on notice that he was committing a felony obstruction of an official proceeding."  Mot. at 12-13. This is simply incorrect.  It is well-settled that the government may use a defendant's statements to prove his criminal intent—here, the defendant's state of mind as he traveled to the Capitol and

entered it.  *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993) ("The First Amendment, moreover, does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent. Evidence of a defendant's previous declarations or statements is commonly admitted in criminal trials subject to evidentiary rules dealing with relevancy, reliability, and the like.").  The First Amendment neither protects the defendant from the incriminating nature of his own statements, nor does it render Section 1512(c) vague as applied to him.

For the same reason, the defendant's claim that he is being prosecuted for his statements about his conduct at the Capitol also is meritless.  While the First Amendment does curtail prosecutions for speech to limited circumstances such as fighting words and true threats, those circumstances are not at issue here, as the defendant is not charged under any such statute.  Rather, he is charged with engaging in conduct—not speech—that obstructed the Electoral College vote certification, "by entering and remaining in the United States Capitol without authority and participating in disruptive behavior."  Indictment (ECF 8).  That his own statements about his conduct will serve as evidence of his intent to commit this crime does not render the prosecution in violation of the First Amendment.  *Mitchell*, 508 U.S. at 489.

The defendant's reliance on *City of Houston v. Hill*, 482 U.S. 451 (1987) in support of this contention, is wholly misplaced.  In *Hill*, the Court struck down a city ordinance that criminalized all speech that interfered with a police officer engaged in his duties as overbroad, because it "criminalize[d] a substantial amount of constitutionally protected speech, and accord[ed] the police unconstitutional discretion in enforcement."  482 U.S. at 466.  The Supreme Court has therefore "vigorously enforced the requirement that a statute's overbreadth be *substantial* . . . relative to the statute's plainly legitimate sweep."  *Williams*, 553 U.S. at 292.  "[T]he mere fact

that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). Rather, "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Id.* at 801. And laws that are "not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)" are far less likely to present such a danger. *Hicks*, 539 U.S. 113, 124 (2003); see *id.* (observing that "an overbreadth challenge" to such a law will "[r]arely, if ever, . . . succeed").

The defendant's challenge fails that demanding standard. Because "it is impossible to determine whether a statute reaches too far without first knowing what the statute covers," the "first step in overbreadth analysis is to construe the challenged statute." *Williams*, 553 U.S. at 293. As described above, Section 1512(c)(2) prohibits corruptly obstructing an official proceeding. The operative verbs—obstruct, influence, or impede—principally target conduct rather than speech, *see supra* at 8-9, and those verbs are paired with the "corruptly" scienter requirement, *see Williams*, 553 U.S. at 294 (focusing on scienter requirement in determining that statute was not overbroad). At the very least, the defendants cannot show that Section 1512(c)(2) is "substantial[ly]" overbroad relative to its "plainly legitimate sweep." *Washington State Grange*, 552 U.S. 442, 449 n.6 (2008) (internal quotation marks omitted). The defendant's own prosecution is illustrative of the numerous constitutionally legitimate applications of the statute to conduct and unprotected speech. And far from showing a "realistic danger" of constitutionally problematic applications in other cases, *Taxpayers for Vincent*, 466 U.S. at 801, the defendants fail to identify a single actual example of a prosecution based on protected speech. The limitations inherent in the crime of

conviction, moreover, render the possibility of any such prosecutions marginal at best, and any such case could be the subject of an as-applied challenge.  Nothing at all calls for the "strong medicine," *Los Angeles Police Dep't*, 528 U.S. at 39 (internal quotation marks omitted), of overbreadth invalidation.

Finally, the soundness of this prosecution is unaffected by the fact that a large number of Capitol rioters were charged under Section 1512(c).  The defendant claims that "the government has been inconsistent in its charging decisions" and lists several defendants "out of hundreds" who were also charged under Section 1512(c) and who, he believes, engaged in conduct that is dissimilar to his own.  Mot. at 11.  Because "the facts and circumstances of each case vary drastically from each other," he argues, this further supports Section 1512(c)(2) as unconstitutionally vague.  Mot. at 12.  But "[f]ew subjects are less adapted to judicial review than the exercise by the Executive of his discretion when and whether to institute criminal proceedings, or what precise charge shall be made.  *Sandlin*, *supra*, at 17 (quoting *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 741 (D.C. Cir. 2016)).  None of the Capitol breach defendants are the same, and although "'[d]isparate charging in different circumstances may be relevant sentencing,'" "they are not an appropriate consideration at this stage."  *Id.* at 18 (quoting *United States v. Griffin*, 21-cr-92, 2021 WL 2778557, at *7 (D.D.C. July 2, 2021).

## **CONCLUSION**

For the foregoing reasons, and any additional reasons as may be cited at a hearing on this motion, the government respectfully requests that the defendant's motion be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By:  */s/ Risa Berkower*
Elizabeth Aloi
Assistant United States Attorney
NY Bar No. 4457651
Risa Berkower
Assistant United States Attorney
NY Bar No. 4536538
U.S. Attorney's Office for the District of Columbia
555 4th Street, N.W.
Washington, D.C. 20530
Phone: 202-695-0610 (Aloi)
        202-803-1576 (Berkower)
Email: elizabeth.aloi@usdoj.gov
        risa.berkower@usdoj.gov