UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> v. <br><br> **THOMAS ROBERTSON**, <br><br> and <br><br> **JACOB FRACKER**, <br><br> Defendants. | Case No. 21-cr-34 (CRC) |

**OPINION AND ORDER**

Defendants Thomas Robertson and Jacob Fracker were among those who descended on the United States Capitol on January 6, 2021, while a Joint Session of Congress convened for the certification of the 2020 presidential election results. The government charges defendants with various crimes, including the felony offense of "corruptly" obstructing an "official proceeding" in violation of 18 U.S.C. § 1512(c)(2). An "official proceeding" includes "a proceeding before the Congress." 18 U.S.C. § 1515(a)(1)(B). Defendants move to dismiss only that one charge. In deciding the motions, this Court is not writing on a blank slate. Uniformly denying similar motions, fellow judges in this district have thoughtfully addressed the issues presented here, and this Court finds their opinions persuasive. The Court will therefore deny defendants' motions.

I. **Background**

In the 2020 presidential election, Americans elected Joseph Biden as President. Their votes, however, "actually go toward selecting members of the Electoral College, whom each State appoints based on the popular returns. Those few 'electors' then choose the President," Chiafalo v. Washington, 140 S. Ct. 2316, 2319 (2020), though throughout American history,

they have been "trusty transmitters of" the people's votes. Id. at 2326. In 2020, Mr. Biden collected 306 electoral votes to then-President Trump's 232 votes.

These electoral votes are then "transmit[ted] sealed" to Congress to be counted and certified. U.S. Const. amend XII. The Constitution says that the Vice President, acting as President of the Senate, "shall, in the presence of the Senate and House of Representatives, open all the certificates and the votes [of the Electoral College] shall then be counted"; "[t]he person having the greatest number of votes for President," assuming they have a majority, "shall be the President." U.S. Const. amend XII; see also U.S. Const. art II, § 1, cl. 3. A law called the Electoral Count Act of 1887 provides more structure for how disputes regarding electoral votes are handled by Congress. That law also sets the date and time for Congress to conduct this task: "the sixth day of January" at "1 o'clock in the afternoon." 3 U.S.C. § 15.

So, on January 6, 2021, at approximately 1:00 p.m., the United States House of Representatives and Senate convened for a Joint Session of Congress at the U.S. Capitol building to certify the Electoral College vote count for the 2020 presidential election. See Statement of Facts at 1, ECF No. 1-1. Then-Vice President Mike Pence presided. Id. By 1:30 p.m., the House and Senate retired to separate chambers to resolve an objection to the votes. Id. Although the Capitol was closed to the public that day—announced by permanent and temporary security barriers—a massive crowd gathered outside the building as the certification continued. Id. Around 2:00 p.m., the crowd forced its way into the building, causing the members of the House and Senate, and Vice President Pence, to evacuate. Id. The crowd's breach and subsequent occupation of the Capitol suspended the Joint Session for about six hours, until after 8:00 p.m. Id.

According to the government, defendants Thomas Robertson and Jacob Fracker were among the crowd and entered the Capitol during the suspension of the certification, while the building was on lockdown.[1]  They were photographed inside the Capitol, with Fracker holding up his middle finger in front of a statue.  See Statement of Facts at 1–2 & Ex. A.  Robertson later stated on social media, "CNN and the Left are just mad because we actually attacked the government," and "[t]he right IN ONE DAY took the f***** U.S. Capitol.  Keep poking us."  Id. at 2.  He further stated in Instagram and Facebook posts that he was "PROUD" of the picture, because it showed he and Fracker were "willing to actually put skin in the game and stand up for their rights."  Id., Ex. B.  Fracker said, in a now-deleted Facebook post, "to anyone who's possibly concerned about the picture of me going around…. sorry I hate freedom?  Sorry I fought hard for it and lost friends for it?"  Id. at 2 & Ex. C.  Robertson also claimed that he was "escorted 'in' by the Capitol Police" and that he "did not know about the violence" that transpired on January 6th.  See id. at 2.

On January 29, 2021, a federal grand jury returned an indictment, listing one felony count and multiple misdemeanors.  See Indictment, ECF No. 8.  The government recently obtained a superseding indictment, which adds another felony count against Robertson (as well as other tweaks).  See Superseding Indictment, ECF No. 58.  Only count one, against both defendants, is relevant here:  Obstruction of an Official Proceeding in violation of 18 U.S.C. § 1512(c)(2).  Neither defendant has filed any motions challenging the changes reflected in the superseding indictment.  Trial is scheduled for April 4, 2022.

---

[1] This background is drawn from the affidavit supporting the initial criminal complaint in the case.  The Court recognizes that defendants may dispute some of the facts presented.

Robertson filed his motion to dismiss first, and the government opposed. Fracker then adopted and joined his co-defendant's motion in full.

## II. Legal Standards

A criminal defendant "may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). Pretrial motions may challenge "a defect in the indictment," including "lack of specificity" and "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(iii), (v). Because pretrial dismissal of an indictment "'directly encroaches upon the fundamental role of the grand jury,' dismissal is granted only in unusual circumstances." United States v. Ballestas, 795 F.3d 138, 148 (D.C. Cir. 2015) (citation omitted). An indictment requires only "a plain, concise, and definite written statement of the essential facts constituting the offense charged," Fed. R. Crim. P. 7(c)(1), in order "to inform the defendant of the nature of the accusation against him." Ballestas, 795 F.3d at 148–49 (quoting United States v. Hitt, 249 F.3d 1010, 1016 (D.C. Cir. 2001)). The Court "assumes the truth of those factual allegations." Id. at 149. "The operative question is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed." United States v. Sanford, Ltd., 859 F. Supp. 2d 102, 107 (D.D.C. 2012).

## III. Analysis

Defendants lodge three main arguments against count one of the indictment, but none has merit. *First*, they assert that the charge is defective for failing to specify the precise official proceeding they are alleged to have obstructed. *Second*, they contend that the Joint Session of Congress to certify the electoral votes of the presidential election was not an "official proceeding" under the statute. *Third*, defendants argue that the statute is unconstitutionally vague, and Robertson specifically maintains it is vague as applied to his case. These arguments

4

have been rejected by other courts in this district over the last few months.  See United States v. McHugh, ⸺ F. Supp. 3d. ⸺, 2022 WL 296304, at *3 (D.D.C. Feb. 1, 2022) (collecting cases); United States v. Grider, Crim. A. No. 21-0022 (CKK), 2022 WL 392307 (D.D.C. Feb. 16, 2022); United States v. Nordean, Crim. A. No. 21-175 (TJK), 2021 WL 6134595 (D.D.C. Dec. 28, 2021); United States v. Montgomery, Crim. A. No. 21-46 (RDM), 2021 WL 6134591 (D.D.C. Dec. 28, 2021); United States v. Mostofsky, Crim A. No. 21-138 (JEB), 2021 WL 6049891 (D.D.C. Dec. 21, 2021); United States v. Caldwell, ⸺ F.Supp.3d ⸺, 2021 WL 6062718 (D.D.C. Dec. 20, 2021); United States v. Sandlin, ⸺ F.Supp.3d ⸺, 2021 WL 5865006 (D.D.C. Dec. 10, 2021).  Finding these cases persuasive, this Court will follow suit.

A.  Specification of the Official Proceeding

The superseding indictment effectively moots defendants' first argument based on lack of specificity.  Count one now reads:

> On or about the January 6, 2021, in the District of Columbia and elsewhere, the defendants, **THOMAS ROBERTSON** and **JACOB FRACKER**, attempted to and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, *specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15[–]18*, by entering and remaining in the United States Capitol without authority and participating in disruptive behavior.

See Superseding Indictment at 1 (emphasis added to reflect changes from original indictment).  Defendants have not challenged this new language, and the Court easily concludes that it is sufficiently specific.

The Court will also briefly note that this clarification was unnecessary to survive defendants' motions.  The first indictment—sans the emphasized text above—still provided all the essential elements of the offense and thus "inform[ed] the defendant[s] of the nature of the accusation against" them.  See Ballestas, 795 F.3d at 148–49 (citation omitted).  It "echoe[d] the

5

operative statutory text while also specifying the time and place of the offense" (January 6, 2021, at the U.S. Capitol), the type of official proceeding (a proceeding before Congress), and the acts constituting obstruction (entering and remaining, without lawful authority, and disruptive behavior).  See United States v. Williamson, 903 F.3d 124, 130–31 (D.C. Cir. 2018).  That's generally enough.  See United States v. Resendiz-Ponce, 549 U.S. 102, 108–109 (2007) ("[A]n indictment parroting the language of a federal criminal statute is often sufficient"); Williamson, 903 F.3d at 130–31 (upholding indictment for threatening an officer in "the performance of official duties," even though "it did not identify particular 'official duties'").[2]

      B.  The Certification of the Electoral College Vote is an "Official Proceeding"

Next, defendants argue that the certification of the Electoral College vote does not fall within the term "official proceeding" under 18 U.S.C. § 1512(c)(2).  This section imposes criminal sanctions against anyone who "corruptly . . . obstructs, influences, or impedes any official proceeding, or attempts to do so."  The term "official proceeding" includes within its meaning, as relevant here, "a proceeding before the Congress."  § 1515(a)(1)(B).

The meaning of "'official proceeding' depends heavily on the meaning of the word 'proceeding.'"  Sandlin, 2021 WL 5865006, at *3 (quoting United States v. Ermoian, 752 F.3d 1165, 1169 (9th Cir. 2013)).  Courts have coalesced around "the legal—rather than the lay—understanding" of the word.  See Ermoian, 752 F.3d at 1170; Caldwell, 2021 WL 6062718, at *4; Sandlin, 2021 WL 5865006, at *3.  The "legal understanding" includes, for example, "[t]he

---

[2] And because the indictment is valid, if there were some ambiguity in the charge as initially phrased, the remedy would have been a bill of particulars, not dismissal.  See United States v. Hillie, 227 F. Supp. 3d 57, 81 (D.D.C. 2017); United States v. Ackell, No. 15-cr-123, 2016 WL 6407840, at *3 (D.N.H. Oct. 28, 2016); United States v. Hajecate, 683 F.2d 894, 898 (5th Cir. 1982).

business conducted by a court or other official body." Proceeding, Black's Law Dictionary (11th ed. 2019). "And that 'proceeding' is modified by 'official'—meaning 'formal' and 'ceremonious,' . . . —'indicates a sense of formality,'" which supports this understanding of the term. Sandlin, 2021 WL 5865006, at *3 (quoting Official, def. 5, Oxford English Dictionary (3d ed. 2004); Ermoian, 752 F.3d at 1170).

Applying this reading in the separate context of government investigations, courts have held that neither FBI nor certain internal agency investigations have the requisite level of formality to constitute "official proceedings." See United States v. Young, 916 F.3d 368, 384 (4th Cir. 2019) (citing cases); Ermoian, 752 F.3d at 1171–72; United States v. Ramos, 537 F.3d 439, 463 (5th Cir. 2008). On the other hand, the Second Circuit has held that a "quasi-adjudicative" agency review panel that "contemplate[d] more than a preliminary investigation" and "set[] forth a detailed process of review and decision-making" was "sufficiently formal to satisfy the 'official proceeding' element." United States v. Perez, 575 F.3d 164, 169 (2d Cir. 2009). This case presents a different context, involving a "proceeding before the Congress." § 1515(a)(1)(B).

"A straightforward reading of" the statutory text and application of these principles "easily reaches the Certification of the Electoral College vote." Caldwell, 2021 WL 6062718, at *4. Congress's Joint Session to certify the electoral votes "has many trappings familiar from other types of proceedings." See Mostofsky, 2021 WL 6049891, at *10. To start, the proceeding is mandated by the Constitution, and it is the final step for counting the votes and certifying the presidential election results. U.S. Const. art. II, § 1, cl. 3; U.S. Const. amend. XII. The Electoral Count Act, 3 U.S.C. §§ 15–18, provides a detailed process for this Joint Session. As each certificate of electoral votes is announced, a presiding officer calls for objections, which

must be in writing and signed by both a Senator and a Member of the House; "the Senate and the House withdraw to consider each objection," and there are rules for debate and ruling on objections; and the session cannot "be dissolved until the count of electoral votes shall be completed and the result declared."  See Sandlin, 2021 WL 5865006, at *4 (citing 3 U.S.C. §§ 15–18).  Also worth noting, the proceeding is documented in the Congressional Record, which reports the "*proceedings* and debates" of Congress—objections, deliberations, and decisions on objections in all.  See 167 Cong. Rec. H75, S13 (daily ed. Jan. 6, 2021) (House and Senate Sections) (emphasis added).  In short, the certification is plainly "a proceeding before the Congress."

   Defendants resist this conclusion, arguing that the certification is merely administrative and ceremonial, not adjudicatory, nor does it involve witness testimony or documentary evidence.  "But these extra requirements for an 'official proceeding' are absent from § 1515(a)(1)(B)."  Sandlin, 2021 WL 5865006, at *4; see also Caldwell, 2021 WL 6062718, at *5.  Other provisions also show that a congressional proceeding need not be adjudicatory.  For instance, 18 U.S.C. § 1503 targets obstruction of "the due administration of justice," indicating a requirement for more "court-like" proceedings.  See Sandlin, 2021 WL 5865006, at *4.  Section 1512(c)(2), however, "targets official proceedings more broadly."  Id.; see also Caldwell, 2021 WL 6062718, at *5.  Though true that the section's title is "Tampering with a witness, victim, or an informant," "the title of a statute and the heading of a section cannot limit the plain meaning of the text."  Caldwell, 2021 WL 6062718, at *5 (quoting Trainmen v. Balt. & Ohio R.R. Co., 331 U.S. 519, 528–29 (1947)).

   Even if defendants' extra-textual reading had some merit, the certification of the Electoral College vote is quasi-adjudicatory and involves objections to documents—the electoral

8

ballots from the fifty states. As explained above, it has the familiar features of a formal hearing. Look at the Congressional Record. One need not read far into the transcript before coming to the first objection, to Arizona's electoral ballots. 167 Cong. Rec. at H77. The Vice President found the objection to be procedurally proper, so the House and Senate withdrew, deliberated, and rendered a decision on it. See id.; id. at H93–94; id. at S31–32. Senator Mitch McConnell called it "the most important vote" he had "ever cast." Id. at S14. Although this proceeding has usually occurred without much fanfare, January 6, 2021, was different—even setting aside the breach of the Capitol. But whether or not objections are adjudicated, it remains the case that the certification of the Electoral College vote qualifies as an "official proceeding," specifically "a proceeding before the Congress."

  C. Vagueness Challenge

  Finally, defendants maintain that 18 U.S.C. § 1512(c) is unconstitutionally vague. Robertson submits that this argument has particular force as applied to his case. Fracker, however, raises no independent as-applied arguments.

  The prohibition against vague laws stems from well-settled principles of due process. It is violated if a law is "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." Johnson v. United States, 576 U.S. 591, 595 (2015). A vagueness challenge will fail if the statute at issue simply "'requires a person to conform his conduct to an imprecise but comprehensible normative standard,' whose satisfaction may vary depending upon whom you ask." United States v. Bronstein, 849 F.3d 1101, 1107 (D.C. Cir. 2017) (quoting Coates v. City of Cincinnati, 402 U.S. 611, 614 (1971)). Generally, "laws that call for the application of a qualitative standard . . . to real-world conduct" will withstand a vagueness challenge. Johnson, 576 U.S. at 603–04. Rather, vagueness

problems arise when, applying the tools of statutory interpretation, the statute's "meaning specifies no standard of conduct at all." See Bronstein, 849 F.3d at 1107–08 (cleaned up). Although courts must avoid "applying a novel construction of a criminal statute," judicial interpretation can supply "the requisite level" of "clarity" to satisfy due process. See United States v. Lanier, 520 U.S. 259, 266 (1997).

Defendants claim that 18 U.S.C. § 1512(c) is vague because it asks courts to speculate as to the meaning of "corruptly" and "official proceeding," and in turn fails to provide fair notice of conduct prohibited. Taking "official proceeding" first, as discussed above, "'[t]he plain, obvious and common sense' meaning of that definition . . . reaches the Certification of the Electoral College vote." See Caldwell, 2021 WL 6062718, at *8 (citation omitted). Indeed, "it is difficult to fathom that a reasonable person would not believe the Electoral College certification was an official proceeding, especially since the definition of that term includes 'a proceeding before Congress.'" Mostofsky, 2021 WL 6049891, at *11.[3]

---

[3] Defendants rely on cases that they say reflect arbitrary and ambiguous lines for what counts as an "official proceeding," but none involve whether something was a proceeding before Congress, and defendants take the wrong lesson from the cases. See United States v. Sutherland, 921 F.3d 421, 426 (4th Cir. 2019) (involving a grand jury proceeding, and noting "official proceeding" contains a "limiting term [to] prevent[] a statutory sprawl"); Perez, 575 F.3d at 169 (holding that a "quasi-adjudicative" agency review panel was an official proceeding); United States v. McDaniel, No. 2:13-cr-00015, 2014 WL 2084891, at *1 (N.D. Ga. May 16, 2014) (official proceedings do not include FBI investigations); United States v. Dunn, 434 F. Supp. 2d 1203, 1207–08 (M.D. Ala. 2006) (same for Bureau of Alcohol, Tobacco, Firearms and Explosives investigations). In any event, courts have engaged in largely the same analysis— applying the relevant statutory text to the actual characteristics of the proceeding at issue—and drawn the same line: mere investigations do not count as official proceedings. Cf. Johnson, 576 U.S. at 603–04 ("As a general matter, we do not doubt the constitutionality of laws that call for the application of a qualitative standard . . . to real-world conduct"). Again, this prosecution implicates a different type of proceeding, and the interpretive exercise as applied to the Electoral College vote certification is straightforward.

The Court also concurs with the other courts in this district that have defined "corruptly" to mean acting "with consciousness of wrongdoing." See Caldwell, 2021 WL 6062718, at *8–11; Sandlin, 2021 WL 5865006, at *11–14 ("unlawfully, and with the intent to obstruct"); see also Arthur Andersen LLP v. United States, 544 U.S. 696, 705–06 (2005) (holding that the jury instructions at issue "failed to convey the requisite consciousness of wrongdoing."). Any facial challenge fails, "because the statute specifies 'core' behavior to which it constitutionally applies, though there may be scenarios at the edges that present vagueness problems." See Sandlin, 2021 WL 5865006, at *10; id. at *13; see also Caldwell, 2021 WL 6062718, at *9 (noting "courts uniformly have held that the term 'corruptly' as used in section 1512(c)'s neighboring subparagraph, section 1512(b), is neither void for vagueness nor vague as applied."). Thus, the government will at least have to show that defendants were conscious of wrongdoing.

Like defendants in other cases, Robertson's and Fracker's reliance on United States v. Poindexter falls short. 951 F.2d 369 (D.C. Cir. 1991) (holding "corruptly," undefined in 18 U.S.C. § 1505, unconstitutionally vague as applied to defendant's conduct of lying to Congress). Judges Mehta and Friedrich have thoroughly explained how Poindexter has since been "cabined" to "its facts, and no court of appeals, including the D.C. Circuit, has read [the case] to mean . . . that the term 'corruptly' in any obstruction statute is fatally vague." Caldwell, 2021 WL 6062718, at *9; Sandlin, 2021 WL 5865006, at *10–11. Moreover, the D.C. Circuit has since "affirmed a conviction under § 1512(b) in the face of a *Poindexter*-based challenge." Sandlin, 2021 WL 5865006, at *11 (citing United States v. Morrison, 98 F.3d 619, 630 (D.C. Cir. 1996)).

Also unavailing is defendants' assertion that the government's purportedly arbitrary charging decisions in the January 6th cases reflect vagueness. The exercise of prosecutorial discretion, including "when and whether to institute criminal proceedings, or what precise charge

11

shall be made," is generally ill-suited for judicial review and does not raise any vagueness concerns here. See United States v. Fokker Servs. B.V., 818 F.3d 733, 741 (D.C. Cir. 2016) (citation omitted); Sandlin, 2021 WL 5865006, at *9. "Disparate charging decisions in similar circumstances may be relevant at sentencing," but they are not grounds "to dismiss the charges." United States v. Griffin, —— F.Supp.3d ——, 2021 WL 2778557, at *7 (D.D.C. July 2, 2021).

Turning to Robertson's as-applied challenge, "[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness." Parker v. Levy, 417 U.S. 733, 756 (1974). The Court rejects this as-applied attack too, "given that mapping the statutory language on to his conduct, as described in the statement of facts" and indictment (original or superseding) "is sufficient to state an offense." See Mostofsky, 2021 WL 6049891, at *11. Here, the government alleges that Robertson sought to impede and obstruct the Electoral College vote certification and that he was among the crowd that forced its way into the Capitol, resulting in the suspension of the proceeding and evacuation of Congress. See Indictment at 1; Superseding Indictment at 1; Statement of Facts at 1–2. The government further points to his statements that he "attacked the government" and "took the . . . Capitol" that day, indicative of how he viewed his conduct. See Statement of Facts at 2. Setting aside any other evidence that may be adduced at trial, these allegations are enough to defeat Robertson's as-applied challenge.

Nor does the Court find any First Amendment concerns in the government's use of Robertson's statements to show intent. "The First Amendment . . . does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent." Wisconsin v. Mitchell, 508 U.S. 476, 489 (1993). Section 1512(c)(2), moreover, "targets only 'corrupt' acts of obstructing, influencing, or impeding an official proceeding," so "it does not 'proscribe lawful or constitutionally protected speech.'" Caldwell, 2021 WL 6062718, at *22

(quoting United States v. Thompson, 76 F.3d 442, 452 (2d. Cir. 1996)).  If Robertson had expressed his views only through social media, he almost certainly would not be here.  But he also allegedly took action—entering the Capitol without lawful authority in an alleged attempt to impede the Electoral College vote certification.  See Mostofsky, 2021 WL 6049891, at *12.  His words remain relevant to his intent and motive for taking those alleged actions.

IV. **Conclusion**

For these reasons, it is hereby

**ORDERED** that [52] Thomas Robertson's Motion to Dismiss is **DENIED**.  It is further

**ORDERED** that [57] Jacob Fracker's Motion to Adopt and Join Robertson's Motion to Dismiss is **GRANTED**.  It is further

**ORDERED** that [56] Jacob Fracker's Motion to Dismiss is **DENIED**.

**SO ORDERED**.

CHRISTOPHER R. COOPER
United States District Judge

Date:  February 25, 2022

13