UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA**,

v.

**THOMAS ROBERTSON**,

Defendant.

Case No. 21-cr-34 (CRC)

## MEMORANDUM OPINION

After hearing three days of evidence and deliberating for two, a jury convicted Thomas Robertson on six counts related to his conduct on and shortly after January 6, 2021. Mr. Robertson, a former police officer from Rocky Mount, Virginia, was among the rioters who breached the United States Capitol building, while a Joint Session of Congress convened to certify the 2020 presidential election results. At the close of the government's case in chief, Robertson moved for a judgment of acquittal. The Court reserved ruling on that motion until after the jury verdict. Robertson now renews his motion for acquittal specifically as to three counts: one for obstructing an official proceeding, and two others for trespassing and engaging in disorderly conduct in a restricted building and grounds. See Mot. at 1, ECF No. 114. The latter two charges involve his carrying a "deadly or dangerous weapon," that is, a large wooden stick. Robertson's challenge to the verdict focuses on the sufficiency of the evidence. He also revives legal arguments this Court rejected in a pretrial ruling on a motion to dismiss the obstruction count. See United States v. Robertson, ––– F. Supp. 3d ––––, 2022 WL 969546 (D.D.C. Feb. 25, 2022). Finding enough evidence to sustain a conviction and adhering to its prior decision, the Court will deny Robertson's motion.

I. **Legal Standards**

Federal Rule of Criminal Procedure 29(a) governs a motion for acquittal. Under Rule 29(a), "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." In reviewing the sufficiency of the evidence, the court "must accept the jury's guilty verdict if [it] conclude[s] that '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" United States v. Branham, 515 F.3d 1268, 1273 (D.C. Cir. 2008) (quoting United States v. Arrington, 309 F.3d 40, 48 (D.C. Cir. 2002)); see Jackson v. Virginia, 443 U.S. 307, 319 (1979). The "evidence is to be viewed in the light most favorable to the government, drawing no distinction between direct and circumstantial evidence, and giving full play to the right of the jury to determine credibility, weigh the evidence and draw justifiable inferences of fact." Branham, 515 F.3d at 1273 (citation omitted).

II. **Analysis**

The Court will first address Robertson's arguments for acquittal on count one, obstruction of an official proceeding, and then turn to the question of whether a rational jury could find the wooden stick to constitute a dangerous or deadly weapon.

A. Obstruction of an Official Proceeding

To start, 18 U.S.C. § 1512(c) imposes criminal sanctions against anyone who "corruptly . . . obstructs, influences, or impedes any official proceeding, or attempts to do so"; the term "official proceeding" includes, as relevant here, "a proceeding before the Congress." 18 U.S.C. § 1515(a)(1)(B). Robertson "adopts and incorporates [his] previous arguments in support of the Motion to Dismiss" this count, Mot. at 3, which the Court has already denied. He maintains, for instance, that there is no evidence he "acted corruptly to obstruct, influence, or

impede the due administration of justice." Id. at 5. But there is no "due administration of justice" element in § 1512(c), so this argument misses the point. See Robertson, 2022 WL 969546, at *4 (noting 18 U.S.C. § 1503, which does have this element, requires "more 'court-like' proceedings," whereas § 1512(c)(2) "targets official proceedings more broadly" (citations omitted)).

Further echoing his motion to dismiss, Robertson contends that "Subsection (c)(2) has a serious ambiguity" and that the term "corruptly" is vague as applied to his case. Mot. at 3. But this Court's prior decision—and a slew of other decisions from fellow judges in this district—have explained why that is not so.[1] By way of brief summary, "'[t]he plain, obvious and common sense' meaning of" official proceeding "reaches the Certification of the Electoral College vote." Robertson, 2022 WL 969546, at *5 (quoting United States v. Caldwell, —— F. Supp. 3d ——, 2021 WL 6062718, at *8 (D.D.C. Dec. 20, 2021)). It "has many trappings familiar from other types of proceedings," id. at *4 (quoting United States v. Mostofsky, —— F.

---

[1] See United States v. McHugh, —— F. Supp. 3d ——, 2022 WL 296304, at *3 (D.D.C. Feb. 1, 2022) (collecting cases); United States v. Williams, Crim. A. No. 21-0618 (ABJ), 2022 WL 2237301, at *8–17 (D.D.C. June 22, 2022); United States v. Bingert, No. 21-cr-91-RCL, 2022 WL 1659163, at *3–11 (D.D.C. May 25, 2022); United States v. Reffitt, —— F. Supp. 3d ——, 2022 WL 1404247, at *3–4, *6–10 (D.D.C. May 4, 2022); United States v. Puma, —— F. Supp. 3d ——, 2022 WL 823079, at *13 (D.D.C. Mar. 19, 2022); United States v. Andries, Crim. A. No. 21-93 (RC), 2022 WL 768684, at *3–7, *10–13 (D.D.C. Mar. 14, 2022); Robertson, 2022 WL 969546 (Cooper, J.); United States v. Grider, —— F. Supp. 3d ——, 2022 WL 392307, at *3–8 (D.D.C. Feb. 9, 2022); United States v. Nordean, —— F. Supp. 3d ——, 2021 WL 6134595, at *4–13 (D.D.C. Dec. 28, 2021); United States v. Montgomery, —— F. Supp. 3d ——, 2021 WL 6134591, at *4–23 (D.D.C. Dec. 28, 2021); United States v. Mostofsky, —— F. Supp. 3d ——, 2021 WL 6049891, at *9–12 (D.D.C. Dec. 21, 2021); United States v. Caldwell, —— F. Supp. 3d ——, 2021 WL 6062718, at *4–21 (D.D.C. Dec. 20, 2021); United States v. Sandlin, —— F. Supp. 3d ——, 2021 WL 5865006, at *3–14 (D.D.C. Dec. 10, 2021). But cf. United States v. Miller, —— F. Supp. 3d ——, 2022 WL 823070, at *3–15 (D.D.C. Mar. 7, 2022) (holding that defendant's conduct did not fit within the scope of 18 U.S.C. § 1512(c), and adopting a different interpretation of that statute than other cases).

Supp. 3d ——, 2021 WL 6049891, at *10 (D.D.C. Dec. 21, 2021)), and can be quasi-adjudicative in nature, as the Congressional Record from the day illustrates. See id. (citing 167 Cong. Rec. H75, S13 (daily ed. Jan. 6, 2021) (House and Senate Sections)).

Nor is the term "corruptly" unconstitutionally vague. The statute is properly narrowed by imposing this mens rea element, which requires "acting 'with consciousness of wrongdoing.'" Robertson, 2022 WL 969546, at *6 (citing Caldwell, 2021 WL 6062718, at *8–11); see also United States v. Sandlin, —— F. Supp. 3d ——, 2021 WL 5865006, at *11–14 (D.D.C. Dec. 10, 2021) ("unlawfully, and with the intent to obstruct"). And the jury instructions here "convey[ed] the requisite consciousness of wrongdoing," Arthur Andersen LLP v. United States, 544 U.S. 696, 705–06 (2005); see Final Jury Instr. at 12, ECF No. 86, "thus rendering" Robertson's proposed insertion of "the word 'dishonestly' unnecessary." See United States v. Reffitt, —— F. Supp. 3d ——, 2022 WL 1404247, at *6 (D.D.C. May 4, 2022) (rejecting this same argument). Robertson further contends that "corruptly" requires "that he influenced another to violate their legal duty." Mot. at 4. Not so. Courts have adopted this interpretation when "the defendant must have 'corrupted' another person," in the "transitive sense" of the word. Reffitt, 2022 WL 1404247, at *6. "[I]n § 1512(c)(2)"—the offense at issue here—"'corruptly' is used in the intransitive, such that the defendant's *own* behavior must be corrupt." Id. (internal citation omitted). As will be explained later, the evidence here showed that.

Next, Robertson gestures at a requirement that the government prove that he impaired "the integrity and availability of non-object information to be used in the official proceeding." See Mot. at 4–5. Courts have rejected such a "limiting construction for § 1512(c)" because the statute's plain meaning "cover[s] more than just acts affecting evidence." See Reffitt, 2022 WL 1404247, at *7; see also Sandlin, 2021 WL 5865006, at *5–10. This Court agrees. Section

1512(c)(2) proscribes "obstruct[ing], influenc[ing], or imped[ing] any official proceeding." "These terms are expansive and seemingly encompass all sorts of actions that affect or interfere with official proceedings, including blocking or altering the evidence that may be considered during an official proceeding *or*, as the defendant[] attempted, halting the occurrence of the proceeding altogether." Sandlin, 2021 WL 5865006, at *5.

Robertson's proposed "non-object information" requirement, Mot. at 4, also differs from Judge Nichols's decision in United States v. Miller, which homed in on "action with respect to a document, record, or other object." See —— F. Supp. 3d ——, 2022 WL 823070, at *15 (D.D.C. Mar. 7, 2022). But his motion partly relies on Miller, as did his proposed jury instructions, see Joint Proposed Jury Instr. at 6–7 (Def. Proposed Instr. No. 18), ECF No. 76, so the Court will lay out a few points rejecting it.

This Court concurs with the heavy weight of authority concluding § 1512(c)(2)—which refers to obstructing "any official proceeding" generally—is not limited by subsection (c)(1)—which refers to "alter[ing], destroy[ing], mutilat[ing] or conceal[ing] a record, document, or other object" specifically. See, e.g., United States v. Puma, —— F. Supp. 3d ——, 2022 WL 823079, at *12–13 (D.D.C. Mar. 19, 2022); United States v. Bingert, No. 21-cr-91-RCL, 2022 WL 1659163, at *7–11 (D.D.C. May 25, 2022); Reffitt, 2022 WL 1404247, at *5–10; United States v. McHugh, Crim. A. No. 21-453 (JDB), 2022 WL 1302880, at *4–12 (D.D.C. May 2, 2022); United States v. Montgomery, —— F. Supp. 3d ——, 2021 WL 6134591, at *10–18 (D.D.C. Dec. 28, 2021). Naturally read, subsection (c)(1) is about the alteration of evidence and hindering its use in an official proceeding; subsection (c)(2) is about "otherwise," meaning in a different way than what's provided in (c)(1), hindering the official proceeding itself. The word "otherwise"

5

simply "signals a shift in emphasis, from actions directed at evidence to actions directed at the official proceeding itself." Montgomery, 2021 WL 6134591, at *12 (internal citation omitted).

That is "how an ordinary person (a reporter; a police officer; yes, even a lawyer)" would read the text. See Wooden v. United States, 142 S. Ct. 1063, 1069 (2022). The list of verbs in subsection (c)(1) "differ in material respects from the verbs in" (c)(2). Montgomery, 2021 WL 6134591, at *14. Same for the nouns—"record[s], document[s], or other object[s]" in subsection (c)(1), versus "official proceeding[s]" in subsection (c)(2). Id. ("[T]he Court might ask here: How anyone could alter, destroy, mutilate or conceal an 'official proceeding' or how anyone could 'obstruct[ ], influence[ ], or impede[ ]' 'a record, document, or other object'?" (alterations in original)). Thus, almost all courts in this district have "found that a defendant *otherwise* obstructs, impedes, or influences a proceeding under § 1512(c)(2) when he does so by means *different* than those proscribed by the preceding § 1512(c)(1)." Reffitt, 2022 WL 1404247, at *8.

Miller sidesteps the above interpretation first by invoking the rule of lenity as a background principle before starting its statutory interpretation, and then, with that lens, discovering ambiguity based on a singular focus on the word "otherwise." See 2022 WL 823070, at *4–5, *6–11. That gets the analysis backwards. Lenity is reserved "for those situations in which a reasonable doubt persists about a statute's intended scope even *after* resort to 'the language and structure, legislative history, and motivating policies' of the statute." Moskal v. United States, 498 U.S. 103, 108 (1990) (quoting Bifulco v. United States, 447 U.S. 381, 387 (1980)). No such doubt lingers as to § 1512(c)(2)'s scope. The rule of lenity, however venerable, cannot come to a defendant's aid if a straightforward, even if expansive, construction covers his conduct. See United States v. Wiltberger, 18 U.S. (5 Wheat.) 76, 95 (1820) (the "maxim" that "penal laws are to be construed strictly . . . is not to be so applied as to narrow the

6

words of the statute to the exclusion of cases which those words, in their ordinary acceptation, . . . would comprehend."). Breadth is not the same thing as ambiguity.

Miller then outlines three supposed buckets for what "otherwise" could mean. See 2022 WL 823070, at *6–11 ("otherwise" could be a "clean break" between subsections (c)(1) and (2); it could link the subsections by indicating that (c)(1) provides specific examples of conduct that violates (c)(2); or it suggests that (c)(2) is a residual clause). Yet none of the three options appear to cover the majority reading stated above. The majority interpretation "both recognize[s] a link between the subsections and g[ives] meaning to the word 'otherwise.'" Reffitt, 2022 WL 1404247, at *8. The difference, it seems, is that other courts have not read the statute by first putting on the lens of lenity; instead, they resort to natural meaning and exhaust the tools of statutory interpretation as to § 1512(c) as a whole.[2] Under that approach, this Court does not find the interpretive question particularly hard.

Moving to the sufficiency of the evidence, Robertson's motion does not mount much of a challenge that, guided by the instructions given by the Court, a jury could have found him guilty of a violation of § 1512(c)(2). His arguments are mostly legal, as canvassed above, and thus challenge the jury instructions themselves. In any event, the Court concludes that the evidence comfortably supports the jury's verdict on each element: (1) the defendant attempted to or did obstruct or impede an official proceeding; (2) the defendant intended to obstruct or impede the

---

[2] The real motivating concern in Miller may well be the breadth of the prohibition in § 1512(c)(2). That concern, though perhaps generally fair in certain cases, is misplaced here because the strict mens rea requirement of "corruptly" is "the key to what may or may not lawfully be done"—that is, it "limit[s] criminality" to those "conscious of their wrongdoing." See Arthur Andersen, 544 U.S. at 704–06; Wooden, 142 S. Ct. at 1076 (Kavanaugh, J., concurring) (also suggesting that mens rea requirements "better address[]" such "concern[s] for fair notice").

official proceeding; (3) the defendant acted knowingly, with awareness that the natural and probable effect of his conduct would be to obstruct or impede the official proceeding; and (4) the defendant acted corruptly.  See Final Jury Instr. No. 19, at 11–12.

First, "Congress's Joint Session to certify the Electoral College vote" is an "official proceeding," Final Jury Instr. No. 19, at 12, and the evidence showed it was obstructed by the mob of people that breached the Capitol, including Robertson, who was among the first wave of rioters to enter.  See Gov't Ex. 1002; Gov't Ex. 507; Trial Tr. 4/6/2022, at 638–61 (Schwager testimony); id. at 663–73 (Wade testimony).  Second, the jury also heard evidence that Robertson intended to obstruct or impede the certification based on his belief that the 2020 presidential election was rigged.  See, e.g., Trial Tr. 4/6/2022, at 688–91 (Fracker testimony); Gov't Exs. 100A, 100B, 100H, 100J (Facebook posts).  Robertson stated on social media, in one example, that "[c]ivility has left me," and that he was ready for "open armed rebellion."  Gov't Ex. 100H.  After January 6th, too, he made statements indicative of his intent to stop the certification.  See, e.g., Gov't Ex. 100C ("[W]e actually attacked the government who is the problem. . . . The Right IN ONE DAY (without weapons) took the fucking US Capitol.  Keep poking us."); Gov't Ex. 100G ("The picture of Senators cowering on the floor . . . is the most American thing I have seen in my life.  Once….for real….you people ACTUALLY realized who you work for."); see also Gov't Exs. 100D, 100E, 100F (Facebook posts).  That evidence also supports a finding that the defendant acted "with awareness that the natural and probable effect of his conduct would be to obstruct or impede the official proceeding."  See Final Jury Instr. No. 19, at 12.

Robertson's main sufficiency-of-the-evidence challenge seems to be directed at the "corruptly" mens rea element, but it too fails.  The Court instructed the jury that "corruptly"

meant "the defendant must use unlawful means or act with an unlawful purpose, or both. The defendant must also act with 'consciousness of wrongdoing,'" meaning "with an understanding or awareness that what the person is doing is wrong." Final Jury Instr. No. 19, at 12.

Again, the evidence comfortably supports such a finding. In addition to Robertson's statements noted above, other evidence further showed that he intended to use violence on January 6th, which in turn is indicative of using unlawful means or acting with an unlawful purpose. He packed gas masks for himself (which he wore), his co-defendant Jacob Fracker, and a third individual who accompanied them, as well as military-style food rations. See Trial Tr. 4/6/2022, at 693–94, 702–03 (Fracker testimony); Gov't Exs. 201B, 201C, & 201D (body-worn-camera footage screenshots). As the Court will address next, Robertson also brought a large wooden stick, which the jury found to be a dangerous weapon, and he carried it throughout the day. And his counsel has essentially conceded that he "engag[ed] in other independently unlawful conduct," Final Jury Instr. No. 19, at 12–13, by entering and remaining in a restricted area without lawful authority and by engaging in disruptive and disorderly conduct in a restricted area. See Trial Tr. 4/8/2022, at 1040–41 (defense counsel's closing, conceding guilt on certain lesser-included offenses); see also Mot. at 6 ("Mr. Robertson does not dispute that" based on the evidence "a rational jury could infer that he resisted or impeded [law enforcement] officers when they were coming through the crowd."); Trial Tr. 4/6/2022, at 600–01 (Officer Duckett testifying that he was trying to move Robertson out of the way).

Evidence of corrupt intent is further illustrated in Mr. Fracker's testimony that, when he and Robertson arrived, he recognized that the situation was not safe, officers were in trouble, and that the crowd was obviously "out of hand" and overwhelming the officers. Trial Tr. 4/6/2022, at 699–702. Yet Robertson remained among the crowd with his gas mask on, id. at 702–03, 713;

9

again, he stood in the path of officers making their way through the crowd, concededly impeding their progress; and he eventually joined the first wave of people who made their way to the Upper West Terrace to enter the Capitol building. Trial Tr. 4/7/2022, at 892–93 (Camiliere testimony); Gov't Ex. 801. Once inside, Robertson advanced to the Crypt area, where he reconvened with Fracker. Trial Tr. 4/6/2022, at 728 (Fracker testimony). There, they were part of another crowd that well outnumbered police. As that crowd chanted, Robertson banged his stick in time against the ground and Fracker clapped along. See id. at 730–32, 735–36; Gov't Exs. 406 & 407. The evidence permitted the jury to infer that they left only after police finally outnumbered the rioters and ordered them to leave. Trial Tr. 4/6/2022, at 736–42 (Fracker testimony); Gov't Exs. 408 & 403A. In short, a jury could rationally conclude that Robertson knowingly entered a dangerous, volatile situation, and, rather than leave, he joined in and supported the chaos.

\*     \*     \*

Looking at the entire events of the day, Robertson's preparation for and participation in them, and his statements revealing how he viewed his own actions that day, the evidence supports the jury's verdict on count one.

B. Deadly or Dangerous Weapon

Robertson also takes aim at the jury's verdict on counts three and four involving violations of 18 U.S.C. § 1752(a)(1) and (a)(2), which respectively prohibit trespassing and engaging in disorderly or disruptive conduct "in any restricted building or grounds." The law increases these violations from misdemeanors to felonies if "the person, during and in relation to the offense, uses or carries a deadly or dangerous weapon." See 18 § 1752(b)(1)(A). Robertson

asserts that no evidence supports a finding that the large wooden stick he carried that day was a deadly or dangerous weapon. The Court disagrees.

The indictment charged Robertson with "carry[ing]"—but not "using"—"a large wooden stick." See Second Superseding Indictment at 2–3, ECF No. 74. The Court instructed the jury that the term "deadly or dangerous weapon" meant that the stick had to be "capable of causing serious bodily injury or death to another person and the defendant intends that it be used . . . in that manner." Final Jury Instr. No. 21, at 21. Then, in response to a jury question about the meaning of "in that manner," Jury Note No. 2, ECF No. 91, the Court elaborated:

> In order for you to find that the stick is a deadly or dangerous weapon, you must find that (1) it is capable of causing serious bodily injury, and (2) the defendant carried it with the intent to use it in a manner capable of causing serious injury. The defendant need not have actually used the stick in that manner.

See Court's Resp. to Jury Note No. 2, ECF No. 93. This response followed briefing from the parties and incorporated parts of each side's proposed response to the jury note. No objections were raised to this response. See Trial Tr. 4/11/2022, at 1104; cf. Trial Tr. 4/8/2022, at 1096 (defense counsel not objecting to a similar proposed response, including a requirement that "the defendant intended to use the object in a manner capable of causing serious bodily injury").

To begin, Robertson's motion seems to accept the jury instruction, see Mot. at 6 (arguing the government must show "the defendant *intended* to use [the stick] in that manner" (emphasis added)); however, elsewhere the motion suggests that there is no evidence he "*in fact*[] *used* it in such a manner" or that he "*purposely used* his walking stick as a dangerous or deadly weapon." Id. at 6–7 (emphasis added). Again, Robertson was charged only with carrying—not using—a dangerous weapon, so the implication that the evidence must show he actually used the stick as a weapon is wrong. Interpreting a D.C. law with an analogous prohibition on "carry[ing] . . . any deadly or dangerous weapon," the D.C. Circuit has explained that it is sufficient if a defendant

11

"intended to use [an object] as a dangerous weapon." See United States v. Vinton, 594 F.3d 14, 22 (D.C. Cir. 2010) (interpreting D.C. Code § 22-4504(a)); United States v. Broadie, 452 F.3d 875, 881–83 (D.C. Cir. 2006) (addressing argument that police lacked probable cause for arrest, and reasoning that "the relevant inquiry is whether the surrounding circumstances provide probable cause to believe [defendant] intended to use [a] baton to cause great bodily injury, whether in self-defense or otherwise."). That tracks this Court's instruction and response to the jury note, which likewise focused on the defendant's "intent to use it in a manner capable of causing serious injury." See Court's Resp. to Jury Note No. 2; see also Final Jury Instr. No. 21, at 21 (the defendant must have "intend[ed] that it be used . . . in that manner.").[3]

The focus on a defendant's intent to use an object as a dangerous weapon makes sense in the context of a prohibition on "carrying," as opposed to using, an object that is not an "inherently dangerous" weapon. See Vinton, 594 F.3d at 22 (explaining that "inherently dangerous" weapons are those where "the design of the object is such that in its ordinary use it is likely to cause great bodily injury" (citation omitted)); cf. Arrington, 309 F.3d at 45 (noting, in a case about "using" an object as a weapon, that "a distinction between" inherently and non-inherently dangerous weapons is "appropriate"). Consider a pen, for example. It cannot be criminal to simply carry a pen. But a fact finder's assessment may change if there were evidence that a defendant tightly gripped a pen in his hand, raised to his chest, with its tip facing out toward an approaching officer. Even if the defendant never used the pen to jab at the officer, a

---

[3] Although United States v. Arrington, 309 F.3d 40 (D.C. Cir. 2002) is partly instructive and was one focus of discussion during the Court's consultations with the parties on this issue, it arises in a different context. That case dealt with a different statute (18 U.S.C. § 111) that criminalizes "forcibly assault[ing]" an officer and enhances the penalty for anyone who "*uses* a deadly or dangerous weapon." 18 U.S.C. § 111(a), (b) (emphasis added). It does not address "carrying" a dangerous weapon.

12

jury may find that he carried the pen with the intent to use it in a manner capable of causing serious injury.

With that table setting, sufficient evidence supported the jury finding that Robertson carried the stick with an intent to use it in a manner capable of causing serious injury. He does not dispute the first prong—that the large wooden stick was capable of causing serious bodily injury—and instead focuses his challenge to the second "intent" prong. The government's best evidence is the body-worn-camera footage showing Robertson raising the stick in front of his chest and clutching it in a military-trained "port arms" position as officers approached him, while working their way through the crowd just outside the Capitol building. See Trial Tr. 4/6/22, at 523 (Hackerman testimony); Gov't Exs. 200, 201, & 202 (body-worn-camera footage); Gov't Exs. 201B, 201C, & 201D (video screenshots). Notably, he is also wearing a gas mask at this time. Gov't Exs. 201B, 201C, & 201D. Law enforcement witnesses and Fracker (a former police officer himself) further testified that port arms is a position where an officer holds an object, usually a baton, in front of the chest as a means to block or push people back. See, e.g., Trial Tr. 4/6/22, at 589–90 (Duckett testimony) (describing it as "a means of force to push [people] back"); id. at 705 (Fracker testimony) (describing it as "a blocking tool initially" when using a baton).

The government also relies on Robertson's background experience in the military and as a law enforcement officer, arguing that in his "trained hands[] the stick constituted a dangerous weapon." Gov't Opp'n at 19, ECF No. 116. That evidence strikes the Court as less compelling on the question of intent, however, because it mostly goes to whether the stick was capable of causing a serious injury. Nonetheless, in the light most favorable to the verdict, a jury could reasonably conclude that, given Robertson's training as a police officer, he held the stick in port

13

arms with an intent to use the stick as "a means of force" or as "a blocking tool." See Trial Tr. 4/6/22, at 589–90, 602 (Duckett testimony); id. at 705 (Fracker testimony). And the officers on the scene testified that Robertson indeed blocked their path. Trial Tr. 4/6/2022, at 534 (Hackerman testimony); id. at 600–02 (Duckett testimony).

On the other hand, the defense offered a theory that Robertson used the stick only as a walking stick. See Trial Tr. 4/7/2022, at 940–41 (Bobbouine testimony) (testifying that Robertson used a walking stick after an injury he sustained in 2010 or 2011, while serving in Afghanistan); id. at 944–45 (Lavado testimony). While most of the video captured of him that days does show him merely using the stick for walking, a few witnesses who knew Robertson testified that they had never been aware of him using or needing a walking stick. Trial Tr. 4/5/2022, at 451–52 (Ervin testimony); Trial Tr. 4/6/2022, at 550–51 (Witt testimony); Trial Tr. 4/6/2022, at 688, 694 (Fracker testimony); cf. Trial Tr. 4/5/2022, at 441–42 (Ortega testimony) (explaining that if someone were trying to enter the Capitol with "something like a walking stick," officers would ask the individual "what are they utilizing it for, what is the purpose they have it for," and a walking cane would also "go through the x-ray machine" for screening). The jury was thus entitled to discredit the defense's explanation.

A jury perhaps could have found that Robertson raising the stick into a port-arms position was merely reflexive and not actually indicative of his intent. Or it could find—as this jury rationally did—that his holding the stick in port arms while officers approached, and while he wore a gas mask amid a violent crowd, evinced his intent to use the large wooden stick as a means of force if he came into a confrontation with the officers or others in the crowd, even though he ultimately did not use the stick that way. In sum, the Court concludes that the evidence, including the surrounding circumstances of what was happening at the Capitol, is

14

sufficient to support the jury verdict on counts three and four with respect to the defendant carrying a deadly or dangerous weapon.

### III. Conclusion

For these reasons, the Court will deny [114] Thomas Robertson's Motion for Acquittal. A separate Order accompanies this Memorandum Opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: <u>July 5, 2022</u>