**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES | |
| v. | CASE NO: 1:21-cr-00034 |
| Thomas Robertson | |
| *Defendant* | |

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Defendant, Thomas Robertson, by and through counsel, respectfully submits this memorandum in aid of sentencing. For the reasons stated below, Mr. Robertson respectfully requests that the Court sentence Thomas Robertson to 15 months, followed by three years of supervised release.

### I.   PRELIMINARY STATEMENT

For the reasons set forth below, the Defendant believes that the United States Sentencing Guidelines (the "Sentencing Guidelines" or the "Guidelines") should not be used to determine his sentence in this case and respectfully requests that this Court impose a non-Guidelines sentence that is fair and below any sentence suggested by the Guidelines.

While there have been over 700 prosecutions since January 6, 2021, this case and this Defendant are unique. As an initial matter, Mr. Robertson was an off-duty police officer convicted by a jury of many charges arising from the events of January 6, 2021. The events from January 6, 2021 are consistently present in the National News Headlines with hundreds of cases pending in the Courts.

## II. STATUTORY AND GUIDELINE ANALYSIS

1. **Obstruction of an Official Proceeding and Aiding and Abetting**, in violation of Title 18, United States Code, Section 1512(c)(2) and 2)

    Maximum Statutory Penalty: 20 years of imprisonment, a fine up to $250,00.00

| **Base Offense Level** | **14** | **U.S.S.G. § 2J1.2(a)** |
|---|---|---|
| | | |

2. **Civil Disorder and Aiding and Abetting**, in violation of Title 18, United States Code, Section 231(a)(3) and 2)

    Maximum Statutory Penalty: 5 years of imprisonment, a fine up to $250,00.00

| Base Offense Level | 10 | USSG § 2A2.4(a) |
|---|---|---|
| | | |

3. **Entering and Remaining in a Restricted Building or Grounds**, in violation of Title 18, United States Code, Section 1752(a)( I) and (b)(I )(A))

    Maximum Statutory Penalty: The maximum term of imprisonment is 10 years for this Class C Felony. 18 USC §§ 1752(a)(1) and (b)(1)(A).

| Base Offense Level | 4 | USSG § 2B2.3(a) |
|---|---|---|
| Special Characteristics | +2 (Trespass) | USSG § 2B2.3(b)(1)(A)(vii): |
| Special Characteristics | +2 Possession of a dangerous weapon | USSG. § 2B2.3(b)(2): |

4. **Disorderly and Disruptive Conduct in a Restricted Building or Grounds**, in violation of Title 18, United States Code, Section 1752(a)(2) and (b)(1)(A))

    Maximum Statutory Penalty: The maximum term of imprisonment is 10 years for this Class C Felony. 18 USC §§ 1752(a)(2) and (b)(1)(A)

| Base Offense Level | 10 | USSG. § 2A2.4(a) |
|---|---|---|
| | | |

5. **Disorderly Conduct in a Capitol Building**, in violation of Title 40, United States Code, Section 5104(e)(2)(D))

| Base Offense Level | N/A | this offense is a Class B misdemeanor; the Guidelines do not apply to it. See 18 U.S.C. § 3559; U.S.S.G. § 1B1.9. |
|---|---|---|

Maximum Statutory Penalty: The maximum term of imprisonment is six months for this Class B Misdemeanor. 40 USC § 5104(e)(2)(D).

6. **Obstruction of an Official Proceeding**, in violation of Title 18, United States Code, Section 1512(c)(1))

| Base Offense Level | 14 | USSG. § 2J1.2(a) |
|---|---|---|

Maximum Statutory Penalty: 20 years of imprisonment, a fine up to $250,00.00

III. **Whether Special Offense Characteristics Apply**

The Government has indicated an adjusted offense level of 33. In coming to that determination, they have included enhancements under USSG §§2Jl.2(b)(l)(B), USSG 2Jl.2(b)(2), USSG. § 2J1.2(b)(3)(C): USSG § 3C1.1, USSG § 3B1.1

a. **USSG §§2JI.2(b)(l)(B)** "the offense involved causing or threatening to cause physical injury to a person, or property damage, to obstruct the administration of justice."

**Reference to Count One and Count 6**

Defendant respectfully submits that these enhancements are not applicable because at no time did the Defendant cause or threaten physical injury to a person or property. The operative language in USSG §§2Jl.2(b)(l)(B) is "causing

Page **3** of **14**

or threatening to cause physical injury." the Defendant was convicted of carrying or possessing a dangerous weapon.  He was not convicted of using the threatening to cause physical injury to a person or property damage. In the case at bar, Mr. Robertson was convicted of possession of carrying or possessing the weapon, not using it.

b. **USSG 2Jl.2(b)(2)** "the offense resulted in substantial interference with the administration of justice."

### Reference to Count One and Count 6

The Defense disagrees with USSG§ 2J1 .2(b)(2) applying here. The USSG has defined substantial interference with the Administration of Justice includes "a premature or improper termination of a felony investigation; an indictment, verdict, or any judicial determination based upon perjury, false testimony, or other false evidence; or the unnecessary expenditure of substantial governmental or court resources." While we submit that the Government had to expend resources, Mr. Robertson did nothing that increased the resources. *United States v. Duran*, 41 F.3d 540, 546 (9th Cir.1994); Jones, 900 F.2d at 522 (all holding that section 2J1 .3(b)(2)'s enhancement does not apply when the Government fails to identify any expenses in addition to the costs of bringing the Defendant to trial for the perjury offense). *United States v. Norris*, 217 F.3d 262, 273 (5th Cir. 2000)

c. **USSG § 2J1.2(b)(3)(C):** "was otherwise extensive in scope, planning, or preparation."

### Reference to Count One and Count 6

Mr. Robertson traveled to Washington, DC, with thousands of other people in this case. The mere fact that he prepared to go to the rally by gathering water and traveling with others does not suggest extensive scope in planning. It was clear that he followed others into the building, and there was no planning on his part.

d. **USSG § 3C1.1 USSG § 3B1.1** "(obstructing administration of justice): "directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding . . . or attempting to do so"

**Reference to Count One, Count Two, Count Four**

The Defense disagrees with USSG §381 .1 (c). The Defense did not recruit Mr.Fracker. Furthermore, Mr. Fracker went into the Capitol first. While they traveled together and Mr. Robertson provided transportation, there was no leadership role. Accordingly, the Guidelines direct the sentencing judge to consider several factors, including the exercise of decision-making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning and organizing the offense, the nature, and scope of the illegal activity, and the degree of control and authority exercised over others. See *United States v. Bapack*, 129 F.3d 1320, 1324 (D.C. Cir. 1997). Mere "control over a scheme rather than over a participant in a scheme," however, does not warrant a sentencing adjustment pursuant to section 381 .1 (c). Id

e. **USSG § 2A2.4(b)(1)(b)** "a dangerous weapon (including a firearm) was possessed, and its use was threatened."

**Reference to Count Two Count Four**

The Defense concedes that the walking stick pursuant to USSG could be considered a dangerous weapon given the jury's decision; however, this walking stick was not used against an officer or threatened against an officer. One of the Government's witnesses said he felt some contact, and it was unclear whether it was accidental physical contact.

f. **USSG. § 2J1.2(b)(3)(B):** the offense "involved the selection of any essential or especially probative record, document, or tangible object, to destroy or alter."

**Reference to Count 6**

This enhancement should not apply since cell phone destruction (although disputed) was not an essential probative record. The Government did not or was not relying on the cell phone for its case in chief. There was nothing to suggest this "essential or probative" to the Government's case in chief. Furthermore, pursuant to USSG §3C1.1, comment (n.7),1 this enhancement should not apply.

IV. **GROUPING OF COUNTS ONE, TWO, THREE, FOUR, AND SIX**

Under USSG §3Dl.2, counts one, three, and four of which Robertson was convicted should be grouped to calculate the Guidelines range. Section 3D 1.2

---

1 Inapplicability of Adjustment in Certain Circumstances.—If the defendant is convicted of an offense covered by §2J1.1 (Contempt), §2J1.2 (Obstruction of Justice), §2J1.3 (Perjury or Subornation of Perjury; Bribery of Witness), §2J1.5 (Failure to Appear by Material Witness), §2J1.6 (Failure to Appear by Defendant), §2J1.9 (Payment to Witness), §2X3.1 (Accessory After the Fact), or §2X4.1 (Misprision of Felony), this adjustment is not to be applied to the offense level for that offense except if a significant further obstruction occurred during the investigation, prosecution, or sentencing of the obstruction offense itself (e.g., if the defendant threatened a witness during the course of the prosecution for the obstruction offense).

reads, in pertinent part, as follows:

> All counts involving *substantially the same harm* shall be grouped into a single Group. Counts involve substantially the same harm within the meaning of this rule:
>
> ***
>
> (d) When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or *if the offense behavior is ongoing or continuous in nature* and the offense guideline is written to cover such behavior.

Counts Two and Six embody conduct that is treated as a specific offense characteristic in the applicable guideline to another of the counts and should be grouped with Counts One, Three, and Four.

In accordance with the jury's verdict, all of the offenses of conviction should be grouped because they all relate to a single course of conduct, a scheme to defeat a sanctions regime - that, in the words of USSG §3Dl.2(d), "is ongoing or continuous in nature." Therefore, these counts should be grouped under USSG §3Dl.2(d), and, pursuant to USSG §3Dl.3(b), the Court should "apply the offense guideline that produces the highest offense level."

**Guidelines Calculation**

Based on the preceding analysis, Robertson's offense level should be 18 (14 +4 for enhancements), resulting in a Guidelines Range of 27 to 33 months.

**V.    Relevant Sentencing Factors Under 18 USC §3553**

In determining the minimally sufficient sentence, §3553(a) further directs sentencing courts to consider the following factors, among other things:

(1) the nature and circumstances of the offense and the history and characteristics of the Defendant;
(2) the need for the sentence imposed- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the Defendant; and (D) to provide the Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.
(3) the kinds of sentences available.

***

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

### A. Nature and Circumstances of the Offense

The seriousness of this case is reflected in that Congress continues to have hearings regarding the circumstances that led to January 6, 2021, event. There is no question that the circumstances are unique and devasting to our Country's reputation and standing in the World. However, Mr. Robertson's role in the January 6 event was similar to others that were charged with lesser offenses. The event occurred on video, where Mr. Robertson is seen entering the United States Capitol building with a walking stick. While he was convicted of carrying a dangerous weapon, Mr. Robertson never used this weapon against anyone.

### B. History and Characteristics of the Defendant

Mr. Robertson has been a police officer for the last 14 years. His entire life has been spent in service to others. Upon graduating high school, he enlisted in the United States Army Reserve and was honorably discharged in

2009.  While in the United States Army, he was a military police officer.  After finishing his duty in the Army, he was employed as a local police offer.  In 2010 he began working for a private military contract company where an IED in Iraq injured him.  After leaving the private military contractor, he returned to work at the Rocky Mount Police Department, where he has worked until January 7, 2021.  Mr. Robertson has been detained[2] since March 2021.  Attached hereto are his military and law enforcement records.

Before incarceration, Mr. Robertson lived in a modest house with his wife.  His two children from a prior marriage are grown adults.  Being filed herewith are several character letters regarding Mr. Robertson. They include letters from individuals that know the man and his character. All of these letters give an insight to the person that he truly is and that is a person that is very different from the one that the charges against him would suggest. There is also a letter from Mr. Robertson, which I urge Your Honor to pay specific attention to as it explains his remorse more than any sentencing memorandum could.  While Mr. Robertson does not agree with the Jury's ultimate decision that he went into the building with a weapon to disrupt congress he nevertheless accepts the Jury's verdict.   Mr. Robertson, a dedicated law officer of two decades,  admits that he fell into the rabbit hole of "election conspiracy theories." (Page 2. Defendant's Letter to the Court).

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

---

[2] Conditions of Release were revoked because of new allegations of criminal conduct.  There have been no new charges to date regarding these allegations.

The events of January 6, 2021, were both serious and tragic. And yet, as reflected above, not every actor that day had equal culpability. Each person should be judged by their conduct. Mr. Robertson is a police officer and as told by multiple prosecutors he had a higher duty of knowledge than others.  While that may be true his conduct, though admittedly very wrong, his conduct was non-violent.  Police officer or not he is subject to the same frailties of every human-being listening to the leader of the Country, the leader of the free world, spew conspiracy theories.    Regardless, of his Co-Defendant's plea to conspiracy he submits he never entered into agreement, verbal or otherwise with Mr. Fracker.   Mr. Robertson acknowledges its his own conduct that lead the Jury to its verdict.

As a police officer, he has always had the utmost respect for the law, even though his actions on January 6th seem to suggest otherwise.  Mr. Robertson, like many Americans, believed the President of the United States was telling him that the election was stolen.  He had never been political before, but the President was bolstering that the election was stolen and given his state of mind at the time, he believed it.   Mr. Robertson has been educated in the Criminal Justice System from being a lifelong police officer. Still, at this time in our Country's history, he firmly believed that he needed to be heard.  Mr. Robertson has repeatedly stated that he would never harm a fellow officer, and if given direct orders from a fellow officer, he would not have gone into the building.  Nevertheless, he recognizes that even if not instructed by an officer, he should have known that he was not permitted on the premises.   Furthermore, his social media language was completely inappropriate, which he also admits.

### D. <u>Adequate Deterrence</u>

18 USC §3552(a)(2)(B) and (C) states that deterrence encompasses the need to deter crime generally as well as the need to protect the public from further crimes by this specific Defendant. In an instant, Mr. Robertson has lost virtually everything he spent his life making. His incarceration has completely devastated his family. He can never possess a gun and he will never be a law enforcement officer again.

A lenient sentence would still satisfy the considerations of specific and general deterrence. First, Mr.Robertson will never commit any other crime. He will never be in a position to commit another crime like this. Until the time Mr. Robertson was arrested here, he was a highly respected member of his Community and the police community.   He has never been charged with a crime.  That has all changed; his reputation is shattered, and he will have to find a new way to make a living.

The Court in *United States v. Booker,* 543 U.S. 220 (2005),  held that the destruction of a defendant's livelihood was an element to be considered in determining whether the Defendant was entitled to a downward departure under the Sentencing Guidelines. *Pre-Booker,* a court could depart downward where a defendant's business had been destroyed, preventing re-entry into criminal life. *See United States v. Gaind,* 829 F. Supp. 669, 671 (S.D.N.Y. 1993) (downward departure where defendant EPA tester's livelihood was destroyed and he could not re-enter the testing profession, preventing him from possibly engaging in additional criminal activity). The *Gaind* court further declared:

> "*Because of the destruction of the Defendant's... business, the necessity for achieving the purposes of sentencing through sentencing itself [i.e., prison time] has been reduced.*"

*Id. Post-Booker,* many of the factors that used to be possible grounds for a departure under the Guidelines can now be considered by the district court, with greater latitude, under 18 U.S.C §3553(a). *See, e.g., United States v. McBride,* 434 F.3d 470, 476-77 (6th Cir. 2006); *United States v. Mickelson,* 433 F.3d 1050, 1055 (8th Cir. 2006).

Mr. Robertson's shattered career and consequent bleak economic prospects constitute an important factor in this Court's 18 U.S.C. § 3553(a)(2)(B) analysis of the adequacy of deterrence. *United States v. Speed Joyeros, S.A.,* 204 F. Supp. 2d 412 (E.D.N.Y. 2002).

Mr. Robertson currently receives a military disability pension. Mr. Robertson's wife relies on the pension payments to keep the mortgage paid. Pursuant to 38 CFR § 3.666, if Mr. Robertson receives a sentence exceeding 60 days his pension payments shall be discontinued.

### E. The Need to Avoid Unwarranted Disparities

*United States v. Hodgkins*, 1:21-CR-00188-RDM, the Defendant was convicted of 18 U.S.C. § 1512(c)(2).   The minute orders from that matter:

> *(1): In connection with the sentencing of Defendant, the Court has requested and obtained, via email, from the U.S. Sentencing Commission the following information regarding the sentencing of offenders with similar records who have been found guilty of similar conduct to Defendant in this case. The Sentencing Commission reports as follows:*
>
> *"In the case before you the Defendant pled guilty to obstruction of an official proceeding in violation of 18 U.S.C. § 1512(c)(2). The guideline that applies is USSG 2J1.2. Your Probation Office has calculated the*

*guideline range as follows: BOL 14, a 3-level increase for substantial interference with the administration of justice, and a 3-level adjustment for acceptance of responsibility, resulting in a final offense level (FOL) of 14. The offender is assigned to Criminal History Category I. The applicable guideline range is 15-21 months.*

*"We examined our records from fiscal year 2014 through 2020, and found 31 cases that match this guideline calculation. None of these cases were reported from the District of Columbia. In only nine cases was 18 U.S.C. § 1512(c)(2) a statute of conviction.*

*"For the 31 cases matching the guideline calculation under USSG § 2J1.2, in 16 cases (51.6%) the offender received a prison only sentence, in six cases (19.4%) the offender received prison with an alternative, in two cases (6.4 %) the sentences was probation with some condition of confinement, and in seven cases (22.6%) the sentence was probation only.*

*"Of the 31 cases, in seven (22.6%) the sentence was within the guideline range. The average sentence in those cases was 19 months (median = 21 months). Two cases (6.5%) were above range: one upward departure to 36 months and one upward variance to 48 months. The remaining 21 cases (71.0%) were below range. Thirteen cases were below range variances. The average sentence in those cases was seven months (median = six months). One case was downward departure to 14 months, another was a government departure to probation, and the remaining case was a government variance to six months. The remaining six cases were substantial assistance cases.*

*"In order to provide a more narrowly-tailored analysis, we then limited our analysis to the nine cases in which section 1512(c)(2) was one of the statutes (or the only statute) of conviction. Of those nine cases, in two the sentence was within the guideline range. The sentences were 15 and 21 months. There was one upward departure to 36 months. Three cases were below range variances. The average sentence in those cases was 10 months (median = 12 months). One case was a downward departure to 14 months. The remaining two cases were substantial assistance cases." Signed by Judge Randolph D. Moss on 07/13/2021. (lcrdm3) (Entered: 07/13/2021)*

Despite all of these very difficult circumstances, the Defendant has at all times comported himself as the gentleman he is, showing respect for the Court

and the parties. We appreciate that the Court will consider all of the favorable facts and the letters which have been provided to it on the Defendant's behalf and will also consider the events underlying his conviction.

We ask for the Court to "temper justice with mercy" (Portia, The Merchant of Venice), and impose a "sentence sufficient, but not greater than necessary" to meet the directives of 18 U.S.C. §3553(a), which, we submit, is a non-Guidelines sentence significantly below the Guidelines range. Mr. Robertson has currently served approximately 13 months as of today's date.

Respectfully submitted,

ROLLINS AND CHAN

/s/

_____

Mark Rollins
DC Bar Number: 453638
Counsel for Thomas Robertson
419 7TH Street, NW
Suite 405
Washington, DC 20004
Telephone No. 202-455-5610
Direct No: 202-455-5002
mark@rollinsandchan.com

**Date Filed:** July 28, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2022, this motion was electronically filed pursuant to the rules of the Court.

/s/

_____

Mark Rollins